UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

VINCENT GOODMAN,

                Plaintiff,                    10 Civ. 8352

   -against-                              OPINION

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY TRANS-HUDSON
CORP., MARTHA GULICK, DONALD PARENTE, FJC
SECURITY SERVICES, INC., SUMMIT SECURITY
SERVICES, INC., GUARDIAN SERVICE
INDUSTRIES, INC., AND SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 32BJ,

                Defendants.

------------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        GEROSA & VANDERWOUDE
        770 Farmers Mills Road
        Carmel, NY  10512
        By:  Neil Vanderwoude, Esq.

        Attorneys for Defendants

        SERVICE EMPLOYEES INTERNATIONAL UNION,
        LOCAL 32BJ
        101 Avenue of the Americas, 19th Floor
        New York, NY  10013
        By:  Katchen Locke, Esq.

**Sweet, D.J.**


Defendant Service Employees International Union, Local 32BJ ("Local 32BJ", "Defendant", or "Union"), has moved to dismiss the Amended Complaint of plaintiff Vincent Goodman ("Plaintiff" or "Goodman") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Upon the conclusions set forth below, the motion is granted, and the Plaintiff is granted leave to replead.


**Prior Proceedings**


Plaintiff filed this action on November 4, 2010, asserting a duty of fair representation claim against the Union, as well as claims against the Union, the Port Authority of New York and New Jersey ("Port Authority"), the Port Authority Trans-Hudson Corporation, and Plaintiff's former employers, FJC Security Services, Inc. ("FJC") Summit Security Services, Inc. ("Summit"), and Guardian Services Industries, Inc. ("Guardian") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the National Transit System Security Act, 6 U.S.C. § 1142, the New York State Human Rights

1

Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), the New York City
Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq., and the
Conscientious Employee Protection Act (New Jersey's
whistleblower statute), N.J. Stat. Ann. § 34:19-3.

Plaintiff filed an amended complaint ("Amended
Complaint") on February 25, 2011, limiting his claims against
Local 32BJ to a duty of fair representation claim, aiding and
abetting under the NYSHL, and an intentional infliction of
emotional distress claim.  (Am. Compl. ¶¶ 163, 173-75, 190-93.)

Plaintiff seeks declaratory and injunctive relief, as
well as back pay, front pay, compensation for loss of benefits,
other compensatory damages, punitive damages, and fees and
costs.  He does not seek reinstatement.  (Id. ¶¶ A-H.)

According to the Amended Complaint, Goodman was
employed from January, 2004 until February, 2009 at the World
Trade Center site ("Site") in lower Manhattan as a fire safety
director for various security contractor companies contracted to
provide fire safety services at the Site.  (Id. ¶¶ 36-38, 54.)
Plaintiff was first employed by FJC, then by Summit after it
took over the contract from FJC, and ultimately by Guardian,

2

when it replaced Summit in December, 2008.  (Id. ¶¶ 45, 56,
121.)  Throughout his employment, Plaintiff was supervised by
defendants Martha Gulick ("Gulick") and Donald Parente
("Parente"), who, like Plaintiff, were employed by each
successive contractor.  (Id. ¶¶ 38, 39, 44.)

Plaintiff alleges that Gulick made racially
disparaging comments to him during his employment at the Site,
and engaged in other racially hostile acts, including in April
2004, and April and June, 2007.  (Id. ¶¶ 39, 41, 55, 57, 60, 63-
64, 68.)  Goodman does not assert that he complained to Local
32BJ about any of these statements or actions.

Beginning in January 2, 2008, Plaintiff raised a
concern regarding the World Trade Center PATH Station's fire
safety system with Parente and Gulick.  (Id. ¶¶ 73, 77-85.)
Thereafter, through March, 2008, Goodman complained to Parente
about other problems related to the fire command station.  (Id.
¶ 86.)

Plaintiff alleges that in March, 2008, Parente told
him that the Church Street entrance to the World Trade Center
Temporary Transportation HUB was to be closed and that the fire

3

command base and safety system were going to be moved.  Parente

instructed Plaintiff to avoid any involvement in the transition.

(Id. ¶¶ 87-88.)  Plaintiff does not allege that he complained to

the Union about this instruction.

The Amended Complaint alleges that in June, 2008 in

response to Plaintiff advising Gulick that a fire command

station computer circuit board was not fully operational, she

became enraged and berated Plaintiff in front of a Fire

Department official, Captain Weinman, who was inspecting the

station.  (Id. ¶¶ 94-96.)  Later that month, Captain Weinman

conducted another inspection, and found the same problems with

the circuit board, noting that the problems posed a safety risk

to the fire department.  (Id. ¶¶ 101-07.)  According to Goodman,

from September to November, 2008, PATH management retaliated

against him for his discussions with Captain Weinman by moving

his work cubicle and failing to provide him security locks for

his office cabinets.  (Id. ¶¶ 108-113.)  Plaintiff does not

allege that he complained to the Union about Gulick's behavior,

or the retaliation.

In December 2008, Guardian took over the contract at

the Site from Summit, and Goodman was hired.  (Id. ¶¶ 117, 121.)

The Amended Complaint alleges that Parente issued a memorandum instructing security staff to deny Goodman access to the building. (Id. ¶ 123.)  On December 15, 2008, Plaintiff attempted to report to work and was told that he was not allowed in the building. (Id. ¶ 124.)  He and his Union representative met and "discussed the Collective Bargaining Agreement." (Id. ¶ 126.)  They then spoke with Parente, who advised them that per PATH's policy, during the contractor transition period, access to the building would be denied.

On December 16, 2008, Goodman was permitted to work. Later in his shift, however, he was informed by a security officer that he was to be terminated in sixty days. (Id. ¶ 129.)  Plaintiff alleges that on that day, he emailed Parente, Steven Nelson ("Nelson") of Guardian, and his Union representative, but received no response. (Id. ¶¶ 131-32.) Nelson requested a meeting with Goodman the next day and then and repeatedly thereafter told Plaintiff that Parente had complained about his work performance. (Id. ¶¶ 133, 137.) Plaintiff was terminated in February, 2009. (Id. ¶ 36.) According to Plaintiff, Parente terminated him for allowing an unauthorized person, the Union representative, into a secure building. (Id. ¶¶ 139-40.)

5

Plaintiff alleges that in June, 2007, at the request of Gulick, he designed and implemented a Fire Summary Statistics Sheet that tallied the number of fires, smoke conditions, false alarms and water flows that occurred in the PATH system. (Id. ¶¶ 145-149.)  Also at the request of Gulick, Plaintiff redesigned the PATH's Fire Summary Report, and designed and implemented several other projects. (Id.)  Plaintiff alleges that this work required overtime, for which he was never paid. (Id. ¶ 149.)

Plaintiff claims that during a visit by a Union representative, the Union representative raised with Goodman the issue of these extra projects and became concerned that they were beyond the scope of Goodman's job duties. (Id. ¶ 151.) Goodman was told by the Union representative that "he would have to inform the 32BJ about Goodman's work site location, the type of work Goodman was doing and the overtime that Goodman had worked but not getting paid for." (Id. ¶ 152.)  Plaintiff does not allege that he complained to the Union, filed a grievance, or otherwise asked the Union to address any overtime or job duty claims.  Plaintiff also alleges that he designed and published a system book, which the Port Authority retained after he was

terminated.  (Id. ¶ 153.)  Plaintiff does not allege that he
complained to the Union about the system book.

Plaintiff claims that "when violations were reported
to 32BJ, including breaches of the [Collective Bargaining
Agreement], including inter alia, failure to compensate for
overtime, and wrongful termination, 32BJ took no appropriate
action . . . . 32BJ was consistently more concerned about its
relationship with the other defendants than with Goodman.  This
complete failure of 32BJ to represent the interests of its
member and its apparent collusion with the other defendants is
in opposition to a union's duty to its members and presents a
clear breach of its duty to represent."  (Id. ¶¶ 46-48.)

With respect to his termination, Plaintiff asserts
that when he emailed the Union representative on December 16,
2008 to complain about the sixty-day termination notice, he
received no response.  (Id. ¶¶ 131-32.)  However, Goodman states
that after he filed a grievance with Local 32BJ, there was a
"Union hearing" concerning his termination. (Id. ¶¶ 19, 138.)
Plaintiff alleges that Local 32BJ "facilitated only a limited
recovery, and failed to pursue an appeal." (Id. ¶¶ 20-21.)
According to Local 32BJ, on November 30, 2009 Arbitrator Gary

7

Kendellen issued the award concerning the termination, awarding Goodman $7,568.64 in back pay, which was mailed to Goodman December 3, 2009.  (Aff. of Katchen Locke Ex. B.)[1]  Plaintiff further asserts that "upon information and belief, 32BJ had prior and specific notice of Gulick and Parente's discriminatory behavior and failed to represent Goodman by failing to oppose the clear retaliation by Defendants . . . and failing to recover the complete losses arising out of his wrongful termination." (Id. ¶ 173.)

With respect to his overtime and theft of service claims, Goodman asserts that the Union failed to address the recovery of overtime hours, and refused to seek compensation for the programs and publications he developed at work.  (Id.)

Finally, Plaintiff alleges that "32BJ's failure to represent Goodman resulted in Goodman's having to work without suitable protections, and aided in making Goodman's working environment intolerable."  (Id. ¶ 174.)

---

[1]     Plaintiff relied upon the arbitration award in drafting the Amended Complaint, alleging that "32BJ facilitated only a limited recovery, and failed to pursue an appeal" of that award (Am. Compl. ¶ 20).  The Court accordingly may take judicial notice of it.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153(2d Cir. 2002))

The instant motion was marked fully submitted on April 13, 2011.


## The Rule 12(b)6 Standard


In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). In other words, Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

9

## The Duty Of Fair Representation Claims Are Time-Barred

The statute of limitations for a claim that a union breached its duty of fair representation is six months from the date when the Plaintiff knew or reasonably should have known of the union's alleged breach. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 169-71 (1983) (six-month statute of limitations provided by Section 10(b) of the National Labor Relations Act governs breach of duty of fair representation claims); Vital v. Interfaith Med. Ctr., 168 F.3d 615, 620 (2d Cir. 1999) (same).

Plaintiff was terminated February 13, 2009. (Am. Compl. ¶ 36; Locke Aff. Ex. B). The arbitration award was rendered November 30, 2009 and mailed to him December 3, 2009. (Locke Aff. Ex. B.) His duty of fair representation claims were filed November 4, 2010 - nearly 21 months after his termination and almost a year after the award issued.

Plaintiff's claim that the Union facilitated only a limited recovery with respect to his termination arose at the time he received the arbitration award, shortly after December 3, 2009. Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 165

10

(2d Cir. 1989) (duty of fair representation claim that union failed to adequately represent member at arbitration accrues when arbitration award issues).  Likewise, his claim that the Union failed to reply to his December 16, 2008 email concerning the sixty-day termination notice (Am. Compl. ¶ 132)  arose shortly after that date, but no later than that date the arbitration award issued concerning his termination.  Since his lawsuit was filed almost a year later, these claims are dismissed as time-barred.

Plaintiff's claim that the Union failed to oppose retaliation is also time-barred.  The last retaliatory adverse employment action had to have occurred no later than February 13, 2009, the date Plaintiff was terminated.  To the extent the retaliation about which he complains is his termination, that claim arise shortly after December 3, 2009, when he received the arbitration award.

To the extent the retaliation about which he complains is his employer's November, 2008 decision to move his cubicle and its refusal to provide him security locks, those claims fail since he has not alleged that he complained to the Union.  Cohen v. Flushing Hosp. & Medical Ctr., 68 F.3d 64, 68 (2d Cir. 1995)

11

("A grieved employee cannot rely on a union's lack of response
to informal correspondence to toll the statute of limitations
when he has failed to invoke the formal grievance procedures
available to him under a collective bargaining agreement.")
(citing Legutko v. Local 816, In't Bhd. Of Teamsters, 853 F.2d
1046, 1054 (2d Cir. 1988); Sosbe v. Delco Electronics Div. of
General Motors Corp., 830 F.2d 83, 87 (7th Cir. 1987)); Flanigan
v. Int'l Bhd. Of Teamsters, Local No. 671, 942 F.2d 824, 829 (2d
Cir. 1991) ("Because appellants did not ask the Union to process
a grievance on this issue, they cannot complain that the Union
failed to represent them properly.").  Moreover, even if he had
complained to the Union and the Union failed to take action,
those claims are time-barred as well, since he knew or should
have know within a few months of the Union's purported failure
to address these complaints.  See Arnold v. 1199 SEIU, 2011 WL
1486080, at *1 (2d Cir. April 20, 2011) ("Where a union member
sues his union alleging a breach of the union's duty of fair
representation, 'the cause of action accrues no later than the
time when the union member[ ] knew or reasonably should have
known that a breach has occurred.'" (citing Ramey v. Dist. 141,
Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 278
(2d Cir.2004)); Cohen, 68 F.3d 64, 68 (2d Cir. 1995) ("'[a]t
some point prior to the six month statutory period, the

12

appellant should have realized that the Union was taking no
action on her behalf . . . . [and] cannot be allowed to sit back
and claim a lack of notice in light of circumstances such as
these.'" (quoting Metz v. Tootsie Roll Indus., Inc., 715 F.2d
299, 304 (7th Cir. 1983)).

    Goodman's claim that the Union failed to recover
compensation for his alleged overtime and theft of service
claims arose as early as June, 2007.  (Am. Compl. ¶¶ 145-149.)
But to the extent he asserts he continued to design other
projects throughout his employment, these projects obviously
ended when he was terminated in February, 2009.  Plaintiff's has
failed to allege that he filed a grievance regarding these
issues, which warrants dismissal.  Flanigan, 942 F.2d at 829.
Regardless, two years elapsed between the completion of his last
project and the date he filed suit.  Goodman should have known
well before six months prior to his filing that the Union was
taking no action.  See Cohen, 68 F.3d at 68; Metz, 715 F.2d at
303-04.  These claims are therefore dismissed as untimely.

    The same analysis applies to Plaintiff's claim that
"32BJ's failure to represent Goodman resulted in Goodman's
having to work without suitable protections, and aided in making

13

Goodman's working environment intolerable." (Am. Compl. ¶ 174.)
The alleged intolerable working environment ended with the
termination of his employment. While his failure to allege that
he sought the Union's help with this matter warrants dismissal,
any failure by the Union to address this environment was known
or should have been known to Plaintiff well before six months
prior to the filing of this lawsuit in November, 2009. See
Cohen, 68 F.3d at 68; Metz, 715 F.2d at 303-04.


**The Allegations That The Union Violated Its Duty Of Fair
Representation Are Insufficient**


        A claim that the Union breached its duty of fair
representation contains two elements. First, the plaintiff must
prove that the union's conduct was "arbitrary, discriminatory or
in bad faith." Airline Pilots Ass'n, Int'l Union v. O'Neill,
499 U.S. 65, 71 (1991) (internal quotations and citations
omitted). Second, plaintiff "must also prove that there was a
causal connection between the union's wrongful conduct and [his]
injuries." White v. White Rose Food, 237 F.3d 174, 179 (2d Cir.
2001) (internal quotation marks and citation omitted); accord
Hines v. Anchor Motor Freight Inc., 424 U.S. 554, 568 (1976);
Sim v. N.Y. Mailers Union No. 6, 166 F.3d 465, 472 (2d Cir.

1999).  A union's actions are considered arbitrary "only if, in the light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.  The wide range of reasonableness gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong . . . .  A showing of bad faith requires a showing of fraudulent, deceitful, or dishonest action."  White, 237 F.3d at 179 (internal quotation marks and citations omitted).  Moreover, "mere negligence" by the Union in its enforcement of a collective bargaining agreement does not state a claim for breach of the duty of fair representation.  United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372-373 (1990).

To survive a Rule 12(b)(6) motion, a duty of fair representation plaintiff must at least allege that the Union engaged in arbitrary, discriminatory or bad faith conduct and offer some factual support for such claims.  See, e.g., Smith v. Int'l Bhd. of Teamsters, Local 202, No. 10 Civ. 5275, 2011 U.S. Dist. LEXIS 22893, at *6-9 (S.D.N.Y. March 2, 2011); Jenkins v. St. Luke's-Roosevelt Hosp. Ctr., No. 09 Civ. 12, 2009 U.S. Dist. LEXIS 105866, at *34-38 (S.D.N.Y. Oct. 28, 2009); Llanos v. Brookdale Univ. Hosp. & Med. Ctr., No. 10 Civ. 1726, 2011 U.S.

Dist. LEXIS 20934, at *7-8 (E.D.N.Y. March 2, 2011). In Llanos,
a union member alleged that her union violated her rights and
its duty of fair representation by failing to arbitrate her
termination, and that it engaged in "arbitrary and bad faith
conduct." Id. at *4, *7. The court granted the union's motion
to dismiss, since the plaintiff faild to provide sufficient
facts to support those conclusory allegations. Id. at *7-11;
see also McNair v. NY. City Health & Hosp. Co., 160 F. Supp. 2d
601, 605 (S.D.N.Y. 2001) (dismissing pro se duty of fair
representation claim pursuant to 12(b)(6) where plaintiff failed
to allege facts to support claim that union conduct was
arbitrary, discriminatory, or in bad faith); Gordon v. Kings
County Hosp. Ctr., No. 99 Civ. 3927, 2000 U.S. Dist. LEXIS
17440, at *8-9 (E.D.N.Y. Oct. 25, 2000) ("[plaintiff's]
conclusory and broad allegations of failure of representation
cannot be the basis of a cognizable claim"); Coleman v. City of
New York, No. 99 Civ. 1159, 1999 U.S. Dist. LEXIS 19373, at *11-
12 (E.D.N.Y. 1999) (dismissing duty of fair representation claim
and stating that "[a] complaint which consists of conclusory
allegations unsupported by factual assertions fails even the
liberal standard of Rule 12(b)(6)") (internal citations and
quotation marks omitted).

16

Here, Plaintiff has not alleged that the Union's
conduct was arbitrary, discriminatory, or in bad faith.  Goodman
alleges that the Union failed to pursue certain claims against
his employers, failed to secure a full recovery in the
termination arbitration or appeal the arbitration award, and
"aided" in making his working environment intolerable.  There is
no allegation that any of these failures were arbitrary,
discriminatory, or in bad faith, or any supporting facts.

Moreover, it is well-established that before an
employee can bring a claim based on a union's failure to
represent him properly, he first must ask the union to process a
grievance.  Flanigan, 942 F.2d at 829.  Because Plaintiff failed
to allege that he filed grievances or otherwise asked the Union
to take action with respect to any issue except his termination,
his duty of fair representation claims fail with respect to
those other issues.

Plaintiff's allegation that the Union failed to appeal
his arbitration award fails on three grounds.  The weight of
authority within the Second Circuit holds that a union's duty of
fair representation simply does not include a duty to appeal an
unfavorable arbitration decision.  Smith, 2011 U.S. Dist. LEXIS

17

22893, at *6-7 ("a union is under no duty to appeal an adverse
arbitration decision" (citing Nieves v. Dist. Council 37,
AFSCME, No. 04 Civ. 8181, 2009 U.S. Dist. LEXIS 112653, at *29-
30 (S.D.N.Y. Nov. 24, 2009)); Crowell v. Int'l Bhd. of
Teamsters, Local 202, No. 00 Civ. 3480, 2001 U.S. Dist. LEXIS
16627, *10-11 (S.D.N.Y. Oct. 16, 2001) ("The duty of fair
representation generally does not obligate the union to appeal
or to file a petition to vacate an adverse award") (citations
omitted); Hinson v. Depository Trust Co., Nos. 96 Civ. 2008, 96
Civ. 2024, 1997 U.S. Dist. LEXIS 246, at *8-9 (S.D.N.Y. Jan. 16,
1997); Ciano v. Utility Workers Union, Local 1-2, No. 94 Civ.
3423, 1995 U.S. Dist. LEXIS 11723, at *17 (S.D.N.Y. Aug. 15,
1995) ("'Once the arbitrator denied plaintiff's grievance . . .
the union owed plaintiff no duty in deciding whether to seek
judicial review of the committee's ruling because, with respect
to that decision, it was not acting as his exclusive
representative'" (quoting Freeman v. Local Union No. 135
Chauffeurs, 746 F.2d 1316, 1322 (7th Cir. 1984)).

        Further, even assuming this were a cognizable claim,
it is time-barred.  See e.g., Ciano, 1995 U.S. Dist. LEXIS
11723, at *30 (plaintiffs claim that union violated duty of fair
representation by failing to appeal adverse arbitration decision

arose at time he knew of award and lawsuit filed ten months
later was time-barred).  Lastly, Goodman has not alleged that
the Union's refusal was arbitrary, discriminatory or in bad
faith, nor asserted any facts that would support such a claim.
Indeed, he has not even alleged that he requested an appeal.

Finally, to the extent Plaintiff seeks punitive
damages against Local 32BJ for a violation of its duty of fair
representation, such damages are barred as a matter of law.
International Bhd. of Elec. Workers v. Foust, 442 U.S. 42, 52
(1979) (punitive damages may not be assessed against a union for
breaches its duty of fair representation).

## The Allegations Of A Violation Of NYSHRL by the Union Are Insufficient

Plaintiff's claim that the Union aided and abetted
discriminatory acts by Goodman's employers and thereby violated
the NYSHRL is preempted by Section 301 of the Labor Management
Relations Act, 29 U.S.C. § 185, and is subsumed by the Union's
the duty of fair representation.

19

Complete preemption of a plaintiff's state law claims under Section 301 is required where the state law claims are "inextricably intertwined" with consideration of the terms of the collective bargaining agreement, or where the rights and obligations created under state law do not exist independently of the collective bargaining agreement. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985) (employee's state tort claim for bad faith failure to pay disability benefits preempted by Section 301 since collective bargaining agreement governed obligation to provide disability benefits). In some cases, this may be true of state law discrimination claims. See, e.g., Fenn v. Verizon Communs., Inc., No. 08 Civ. 2348, 2010 U.S. Dist. LEXIS 23831, at *16 (S.D.N.Y. March 15, 2010) (NYSDHL claim that union failed to address employer harassment preempted in part because resolution of claim required interpretation of collective bargaining agreement); Cooper v. Wyeth Ayerst Lederle, 34 F. Supp.2d 197, 202 (S.D.N.Y. 1999) (same). Cf. Langford v. Int'l Union of Operating Eng'rs, Local 30, 765 F. Supp. 2d 486, 505-07 (S.D.N.Y. 2011) (distinguishing claims regarding the union failing to protect a member against employer harassment by way of grievance procedures and claim that union members themselves engaged in discriminatory conduct, which

20

court found to arise independently of the collective bargaining agreement).

State law claims are also preempted if they attempt to impose obligations on a union that are subsumed by the duty of fair representation. See Cabrera v. New York City, 436 F. Supp.2d 635, 646 (S.D.N.Y. 2006) ("because [plaintiff] claims that the Union Defendants violated [the] NYSHRL by not properly representing her, this claim is preempted"); Marrero v. City of New York, No. 02 Civ. 6634, 2003 U.S. Dist. LEXIS 4664, at *8-9 (S.D.N.Y. March 31, 2003) (plaintiff's NYSHRL claim against union preempted where it was based on claim of inadequate representation at grievance hearing); Agosto v. Correctional Officers Benevolent Assn., 107 F. Supp.2d 294, 310-11 (S.D.N.Y. 2000) (same); Snay v. U.S. Postal Service, 31 F. Supp.2d 92,99 (N.D.N.Y. 1998) (NYSHRL claims preempted where they were based on plaintiff's claim that union defendants failed to file or prematurely withdrew certain grievances).

It has been assumed for purposes of this motion that Plaintiff is alleging that each of the purported failures by the Union set forth in the Amended Complaint constitutes aiding and abetting.  These claims, however, are covered by the collective

21

bargaining agreements and/or subsumed by the Union's duty of fair representation because they are based upon the contention that the Union failed to represent Plaintiff.  Plaintiff alleges that "upon information and belief, 32BJ had prior and specific notice of Gulick and Parente's discriminatory behavior and failed to represent Goodman by failing to oppose the clear retaliation by Defendants, not addressing the recovery of his overtime hours, refusing to seek compensation for his personal property in the form of programs and publications, and failing to recover the complete losses arising out of his wrongful termination."  (Am. Compl. ¶ 173.)  The "complete failure of 32BJ to represent the interests of its member . . . is in opposition to a union's duty to its members and presents a clear breach of its duty to represent."  (Id. ¶ 48.)

The collective bargaining agreements contain provisions barring unjust discharge, and discrimination on the basis of any characteristic protected by law, including the NYSHRL.  The agreements govern overtime compensation, Union visitation, and management rights with respect to use of equipment and other property, safety, and methods/processes of work.  (Id., Ex. A(1) & (2), Section 9.3, Article V, Article VII; Ex. A(3), Section 12.2, Article XXV, Article VII.)  The

agreements also set forth a grievance and arbitration process for the resolution of disputes concerning these matters.  (Id., Ex. A(1) & (2), Article XIV; Exhibit A(3), Article XXVI.) Although Plaintiff fails to invoke any particular provision of the collective bargaining agreements, his complaints are inextricably intertwined with the agreements' provisions.

Since the essence of Plaintiff's aiding and abetting claims against the Union is that the employers took adverse employment actions against him which violated the collective bargaining agreement, and that the Union failed to remedy these breaches, his NYSHRL claim against the Union is preempted.

Section 296(6) of the NYSHRL provides that it "shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." NY CLS Exec. § 296(6).  However, Plaintiff alleges no facts supporting a claim the Union did any such thing.  He does not allege that he advised the Union of any harassment by Gulick, Parente or anyone else, or that he filed a grievance or otherwise asked the Union to take any action in response to any alleged discrimination.  Speculation that "upon information and belief,

23

32BJ had prior and specific notice of Gulick and Parente's discriminatory behavior" is insufficient to survive a dismissal motion.

## The Allegations Regarding Intentional Infliction Of Emotional Distress by the Union Are Inadequate

Plaintiff's tort claim is likewise preempted by Section 301, and subsumed by the Union's duty of fair representation, for the reasons stated above. Allis-Chalmers Corp., 471 U.S. at 213; Boyum v. Horizon Condominium, No. 05 Civ. 4801, 2007 U.S. Dist. LEXIS 12555, at *20-24 (S.D.N.Y. Feb. 22, 2007) (plaintiff's intentional infliction of emotional distress claim that union wrongfully amended collective bargaining agreement voiding a vacation arbitration award in her favor preempted by Section 301); Korthas v. Northeast Foods, Inc., No. 03 Civ. 552, 2006 U.S. Dist. LEXIS 18846, at *19-22 (N.D.N.Y. Feb. 27, 2006) (plaintiff's emotional distress claim that employer engaged in outrageous behavior by causing his arrest and firing him for workplace threats preempted; resolution of claim required interpretation of management rights, safety, and just cause provisions of collective

24

bargaining agreement); <u>Sheehan v. United States Postal Service</u>, 6 F. Supp.2d 141, 150 (N.D.N.Y. 1997) (tort claim for misrepresentation was preempted by the duty of fair representation because the claim arose from alleged misrepresentations by union officials as to actions they were taking to represent plaintiff in grievance).

Even if Goodman's tort claims were otherwise cognizable, it is nonetheless barred as against the Union under the New York State Court of Appeals decision in <u>Martin v. Curran</u>, 303 N.Y. 276 (1951). To establish a viable state law tort claim against a labor organization in New York State, a plaintiff must plead and establish that each and every member of the union is individually responsible for the action of which he complains, either by direct participation, specific authorization, or knowing ratification. <u>Id.</u> This is because, under New York law, a voluntary unincorporated association, such as Local 32BJ, is neither a partnership nor a corporation. "[Unlike a corporation, i]t is not an artificial person, and has no existence independent of its members . . . A part of the members of a voluntary organization cannot bind the other without their consent before the act which it is claimed binds them is done, or they, with full knowledge of these facts,

25

ratify and adopt it." Id. at 280 (citations and internal
quotation marks omitted). Accord R.M. Perlman Inc. v. N.Y.
Coat, Suit, Dresses, Rainwear & Allied Workers' Union Local 89-
22-1, ILGWU, 789 F. Supp 127, 130-33 (S.D.N.Y. 1992) (state tort
claims dismissed under Martin for failure to allege that "every
single member" of the defendant unions authorized or ratified
the acts complained of); Building Indus. Fund v. Local Union No.
3, IBEW, 992 F. Supp. 192, 195 (E.D.N.Y. 1996) (state law torts
dismissed under Martin, as "an unincorporated labor union has no
legal existence apart from its members, and cannot be held
liable unless every member is individually liable"), aff'd
without opinion, 141 F.3d 1151 (2d Cir. 1998). But see,
Langford, 2011 WL 672414, at *20 (finding Martin to apply only
to common law, not statutory claims). Here, the Complaint is
devoid of allegations sufficient to satisfy the requirements of
Martin.

In addition, the tort claim fails because he has not
alleged facts sufficient to meet New York's "'rigorous, and
difficult to satisfy'" pleading standard for claims of
intentional infliction of emotional distress. Newton v. City of
New York, No. 07 Civ. 6211, 2011 WL 1833184, at *8 (S.D.N.Y.
2011) (quoting Snyder v. Phelps, --- U.S. ---, 131 S.Ct. 1207

26

(2011) (Alito, J., dissenting)); <u>Howell v. New York Post Co.</u>, 81
N.Y.2d 115, 122 (1993) (noting the "strictness" of the standard
for intentional infliction of emotional distress, and observing
that "of the intentional infliction of emotional distress claims
considered by [the New York Court of Appeals], every one has
failed because the alleged conduct was not sufficiently
outrageous"). Such a claim requires conduct to "'be so
outrageous in character, and so extreme, in degree as to go
beyond all possible bounds of decency, and to be regarded as
atrocious, and utterly intolerable in a civilized society.'"
<u>Stuto v. Fleishman</u>, 164 F.3d 820, 827 (2d Cir. 1999) (quoting
<u>Howell</u>, 81 N.Y.2d at 122); <u>Gay v. Carlson</u>, 60 F.3d 83, 89 (2d
Cir. 1995) (New York Courts strictly apply elements of
intentional infliction of emotional distress claim).

Aside from the conclusory assertions that defendants
acted "intentional or recklessly," and their conduct was
"extreme and outrageous," Plaintiff asserts no facts that, even
if true, could be construed to support this claim. The failure
on the Union's part to pursue grievances or obtain a full
arbitration remedy falls far short of this requirement. <u>See</u>
<u>Hylton v. RY Mgmt.</u>, No. 05 Civ. 6710, 2006 U.S. Dist. LEXIS
51364, at *13-14 (S.D.N.Y. July 27, 2006) ("inadequate

27

representation of a union member does not approach the threshold for behavior that courts have deemed 'outrageous' or 'beyond all possible bounds of human decency'") (internal citations omitted).

## Conclusion

Based on the conclusions set forth, Local 32BJ's motion is granted and the Amended Complaint is dismissed as to the Union with leave granted to replead within 20 days.

It is so ordered.

New York, NY
~~July~~        , 2011
8-2-11

_____
ROBERT W. SWEET
U.S.D.J.

28