UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

VINCENT GOODMAN,

                          Plaintiff,                10 Civ. 8352

     -against-                                      OPINION

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY TRANS-HUDSON
CORP., MARTHA GULICK, DONALD PARENTE, FJC
SECURITY SERVICES, INC., SUMMIT SECURITY
SERVICES, INC., GUARDIAN SERVICE
INDUSTRIES, INC., AND SERVICE EMPLOYEES
INTERNATIONAL UNION, LOCAL 32BJ,

                          Defendants.

2/29/12

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY TRANS-HUDSON
CORP., MARTHA GULICK, DONALD PARENTE,

          Defendants-Cross-Plaintiffs,

     -against-

FJC SECURITY SERVICES, INC., GUARDIAN SERVICE
INDUSTRIES, INC., and SUMMIT SECURITY
SERVICES, INC.,

          Defendants-Cross-Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


A P P E A R A N C E S:


Attorneys for Plaintiff

GEROSA & VANDERWOUDE
770 Farmers Mills Road
Carmel, NY  10512

By:  Neil Vanderwoude, Esq.

Attorneys for Defendant FJC Security Services, Inc.

WEISS & WEISS, LLC
50 Main Street, 10th Floor
White Plains, NY  10606
By:  Scott Weiss, Esq.

Attorneys for Defendant Summit Security Services, Inc.

BRODY & ASSOCIATES, LLC
179 Post Road West
Westport, CT 06880
By:  Robert Brody, Esq.

Attorneys for Defendant Port Authority

PORT AUTHORITY OF NY & NJ
225 Park Avenue South, 13th Floor
New York, NY  10003
By:  Kathleen Miller, Esq.
     Benjamin Noren, Esq.

**Sweet, D.J.**

Defendant FJC Security Services Inc. ("FJC") has moved to dismiss the Amended Complaint of plaintiff Vincent Goodman ("Goodman" or "Plaintiff") and the cross-claims of the defendants The Port Authority of New York and New Jersey, Port Authority Trans-Hudson Corporation, Martha Gulick ("Gulick"), and Donald Parente ("Parente") (collectively, the "Port Authority Defendants") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Summit Security Services, Inc. ("Summit") has moved to dismiss Plaintiff's claims against it pursuant to Rule 12(b)(6) as well as for judgment on the pleadings pursuant to Rule 12(c) as to the cross-claims of the Port Authority Defendants.  The motions are granted in part and denied in part as set forth below.

## I. Prior Proceedings

Plaintiff filed this action on November 4, 2010, asserting claims against the Port Authority Defendants and his former employers, FJC, Summit, and Guardian Services Industries, Inc. ("Guardian"), and defendant Service Employees International Union, Local 32BJ ("Local 32BJ" or the "Union") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

1

("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"), the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq., the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq., the Federal Whistleblower Act, and the Conscientious Employee Protection Act (New Jersey's whistleblower statute), N.J. Stat. Ann. § 34:19-3.   In addition, as to defendant Local 32BJ, Goodman asserted a duty of fair representation claim and, as to the Port Authority, Goodman asserted a claim for theft of services.

Plaintiff filed an amended complaint ("Amended Complaint") on February 25, 2011. (Am. Compl. (Dkt. No. 14).)

According to the Amended Complaint, Goodman was employed from January, 2004 until February, 2009 at the World Trade Center site (the "Site") in lower Manhattan as a fire safety director for various security contractor companies contracted to provide fire safety services at the Site. (Id. ¶¶ 36-38, 54.) Goodman was first employed by FJC, then by Summit after it took over the contract from FJC, and ultimately by Guardian, when it replaced Summit in December, 2008. (Id. ¶¶ 45, 56, 121.)   Throughout his employment, Plaintiff was

2

supervised by defendants Gulick and Parente who, like Plaintiff, were employed by each successive contractor.   (Id. ¶¶ 38, 39, 44.)

Plaintiff alleges that Gulick made racially disparaging comments to him during his employment at the Site, and engaged in other racially hostile acts, including in April 2004, and April and June, 2007.   (Id. ¶¶ 39, 41, 55, 57, 60, 63-64, 68.)   Specifically, Goodman alleges that in April 2004, while he was employed by FJC and working under the supervision of Parente and Gulick, Gulick told Goodman in the presence of Parente and another employee that, because Goodman was black, had a large family, and received a tax credit, "people like you were the reason the rest of us have to pay high taxes."   (Id. ¶¶ 54-55.)

Goodman further alleges that on April 4, 2007, after Summit took over the contract for PATH, while he was still supervised by Gulick and Parente, Gulick printed the official Handbook for the Ku Klux Klan from a printer in the Safety Department.   (Id. ¶ 57.)   Plaintiff alleges that he saw the document on the printer, another employee reported the incident

3

to department heads, and Goodman was questioned by about the document due to that complaint. (Id. ¶¶ 58-59.)

The Amended Complaint alleges that on April 8, 2007, Gulick called Goodman into her office, told him she had printed the KKK Handbook, and threatened Goodman with termination if he ever discussed such matters with anyone in the department other than her or if he went over her head. (Id. ¶ 60.) On April 11, 2007, Goodman alleges that he reported the threat from Gulick to Port Authority's Human Resources department, which informed him that they had spoken to Gulick regarding the document. (Id. ¶¶ 61-62.) Goodman was not informed that Port Authority's Human Resources department took any other action. (Id. ¶ 62.)

On or about June 18, 2007, an article was placed on Goodman's desk and another employee's chair, relating to a relative of Gulick who was convicted of hanging an African-American man in Jackson, Mississippi in 1964. (Id. ¶ 63.) According to Goodman, when questioned about the June 18, 2007 incident, Gulick stated "I am going to play the sick card." (Id. ¶ 64.) After an investigation was initiated, Gulick removed herself from the office and did not return to work from Mid-July through the end of October, and upon her return to

4

work, Gulick's hours were reduced until January of 2008.  (Id.
¶¶ 65-66.)  The Amended Complaint alleges that, upon information
and belief, no action was taken against Gulick in connection
with these incidents (id. ¶ 67), and upon her return to work,
Gulick "continued to openly engage in racial innuendo and
treated Goodman with disrespect on a regular basis, berating him
in front of other staff and the public."  (Id. ¶ 68.)

Beginning in January 2, 2008, Plaintiff raised a
concern regarding the World Trade Center PATH Station's fire
safety system with Parente.  (Id. ¶¶ 73, 77-85.)  Thereafter,
through March, 2008, Goodman alleges that he complained to
Parente about other problems related to the fire command
station.  (Id. ¶ 86.)

Plaintiff alleges that in March, 2008, Parente told
him that the Church Street entrance to the World Trade Center
Temporary Transportation HUB was to be closed and that the fire
command base and safety system were going to be moved.  Parente
instructed Plaintiff to avoid any involvement in the transition.
(Id. ¶¶ 87-88.)

The Amended Complaint alleges that in June, 2008 in response to Plaintiff advising Gulick that a fire command station computer circuit board was not fully operational, she became enraged and berated Plaintiff in front of a Fire Department official, Captain Weinman, who was inspecting the station. (Id. ¶¶ 94-96.) Later that month, Captain Weinman conducted another inspection, and found the same problems with the circuit board, noting that the problems posed a safety risk to the fire department. (Id. ¶¶ 101-07.) According to Goodman, from September to November, 2008, PATH management retaliated against him for his discussions with Captain Weinman by moving his work cubicle and failing to provide him security locks for his office cabinets. (Id. ¶¶ 108-113.)

In December 2008, Guardian took over the contract at the Site from Summit, and Goodman was hired. (Id. ¶¶ 117, 121.) The Amended Complaint alleges that Parente issued a memorandum instructing security staff to deny Goodman access to the building. (Id. ¶ 123.) On December 15, 2008, Plaintiff attempted to report to work and was told that he was not allowed in the building. (Id. ¶ 124.) He and his Union representative met and "discussed the Collective Bargaining Agreement." (Id. ¶ 126.) They then spoke with Parente, who advised them that per

6

PATH's policy, during the contractor transition period, access to the building would be denied.

On December 16, 2008, Goodman was permitted to work. Later in his shift, however, he was informed by a security officer that he was to be terminated in sixty days. (Id. ¶ 129.) Steven Nelson of Guardian requested a meeting with Goodman the next day and then and repeatedly thereafter told Plaintiff that Parente had complained about his work performance. (Id. ¶¶ 133, 137.) Plaintiff was terminated in February, 2009. (Id. ¶ 36.) According to Goodman, Parente terminated him for allowing an unauthorized person, the Union representative, into a secure building. (Id. ¶¶ 139-40.)

Plaintiff alleges that in June, 2007, at the request of Gulick, he designed and implemented a Fire Summary Statistics Sheet that tallied the number of fires, smoke conditions, false alarms and water flows that occurred in the PATH system. (Id. ¶¶ 145-149.) Also at the request of Gulick, Plaintiff redesigned the PATH's Fire Summary Report, and designed and implemented several other projects. (Id.) Plaintiff alleges that this work required overtime, for which he was never paid. (Id. ¶ 149.) Plaintiff also alleges that he designed and

7

published a system book, which the Port Authority retained after he was terminated.  (Id. ¶ 153.)

The Amended Complaint asserts racial discrimination, retaliation, hostile work environment, and wrongful termination claims under Title VII, the NYSHRL, the New Jersey Law Against Discrimination, and the NYCHRL; claims for unpaid overtime under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., New York Labor Law § 232, and the New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a et seq.; as well as whistleblower claims under the Federal Railroad Safety Act and New Jersey's whistleblower statute.  Goodman additionally asserts a claim for theft of services as to the Port Authority, PATH, Summit, Guardian, and FJC; a claim for intentional infliction of emotional distress as to the Port Authority, PATH, Summit, Guardian, FJC, and Local 32BJ; and a duty of fair representation claim to Local 32BJ.

Plaintiff seeks declaratory and injunctive relief, as well as back pay, front pay, compensation for loss of benefits, other compensatory damages, punitive damages, and fees and costs.  (Id. ¶¶ A-H.)

8

On April 1, 2011, the Port Authority Defendants filed cross-claims against FJC, Summit, and Guardian for breach of contract, contractual indemnification, common law indemnification, and contribution.  (Dkt. No. 28.)

Goodman's claims against Guardian have been settled and were dismissed on June 6, 2011.  (Dkt. No. 62.)

Local 32BJ's motion to dismiss Goodman's complaint against it was granted by opinion dated August 2, 2011 (the "August 2 Opinion").  (Dkt. No. 80.)

The instant motions were heard on September 21, 2011.

## II. Conclusions of Law

### A. Legal Standard

### i. The 12(b)(6) Standard

On a motion to dismiss pursuant to Rule 12(b)(6), all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader.  Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  "'The issue is not whether a plaintiff will ultimately prevail but

9

whether the claimant is entitled to offer evidence to support
the claims . . . .'" <u>Villager Pond, Inc. v. Town of Darien</u>, 56
F.3d 375, 378 (2d Cir. 1995) (quoting <u>Scheuer v. Rhodes</u>, 416
U.S. 232, 236 (1974)).


        To survive a motion to dismiss pursuant to Rule
12(b)(6), "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937,
1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544,
570 (2007)).  Plaintiffs must allege sufficient facts to "nudge[
] their claims across the line from conceivable to plausible."
<u>Twombly</u>, 550 U.S. at 570.   Though the Court must accept the
factual allegations of a complaint as true, it is "'not bound to
accept as true a legal conclusion couched as a factual
allegation.'" <u>Iqbal</u>, 129 S. Ct. at 1950 (quoting <u>Twombly</u>, 550
U.S. at 555).


ii. The Rule 12(c) Standard

        A motion for judgment on the pleadings made pursuant
to Federal Rule of Civil Procedure 12(c) is analyzed under the

same standard applicable to a motion to dismiss for failure to state a claim made pursuant to Rule 12(b)(6). See, e.g., Johnson v. Rowley, 569 F.3d 40, 43-44 (2d Cir. 2009); Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).

**B.  FJC's Motion to Dismiss**

i. FJC's Motion To Dismiss Based On Improper Service Is Denied

FJC was served with the original complaint through the New York Secretary of State on January 11, 2011.  The Amended Complaint was also served through the New York State Secretary of State on April 14, 2011.  FJC's motion to dismiss on the basis of improper service is therefore denied.

ii. FJC's Motion To Dismiss The Discrimination Claims Against It Is Granted

The Amended Complaint asserts racial discrimination, retaliation, hostile work environment, and wrongful termination claims under Title VII, the NYSHRL, and the NYCHRL.

At the threshold, FJC argues that Goodman's complaint must be dismissed for a failure to allege a prima facie case

11

under the familiar framework articulated in McDonnell Douglas and its progeny, which requires that a plaintiff demonstrate that: (1) he or she is a member of a protected class; (2) that the plaintiff was qualified for the position; (3) that he or she was subjected to an adverse employment action, and (4) that the action or decision occurred under circumstances which give rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Fagan v. N.Y. State Elec. & Gas Corp., 186 F.3d 127, 132 (2d Cir. 1999); De La Cruz v. N.Y. City Human Resources Admin. Dep't of Soc. Servs., 82 F.3d 16, 20-21 (2d Cir. 1996). However, in Swierkiewicz v. Sorema N.A., the Supreme Court expressly held that "[t]he prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement" and that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" under McDonnell Douglas. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-23; see also Schwab v. Smalls, 435 Fed. Appx. 37, 39-40 (2d Cir. 2011) ("The teaching of Swierkiewicz, then, is that a plaintiff alleging employment discrimination need not plead facts establishing a plausible prima facie case of discrimination to survive a motion to dismiss.") While questions have been raised as to Swierkiewicz's continued validity in light of Twombly and Iqbal, the Second Circuit has

refrained from addressing the question. See Schwab, 435 Fed. Appx. at 40; Hedges v. Town of Madison, -- F.3d --, 2012 WL 101199 (2d Cir. 2012) (noting that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit" and holding that "at a minimum, employment discrimination claims must meet the standard of pleading set forth in Twombly and Iqbal, even if pleading a prima facie case is not required.").

As to the Title VII claims against FJC, Goodman points only to the alleged 2004 comment by Gulick that "people like [Plaintiff are] the reason the rest of us have to pay high taxes." (Am. Compl. ¶ 54-55.) Goodman points to no additional adverse employment action taken against him during FJC's contract with PATH. Although allegedly discriminatory remarks may, in some cases, be so pervasive as to support a claim of discrimination based on a theory that they create a hostile work environment, see Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002), this remark is insufficiently severe or pervasive to support such a claim. Accordingly, under any standard of pleading, Goodman's discrimination claims must fail as to FJC.

13

### iii. FJC's Motion To Dismiss The Federal Overtime Claim Is Granted

The Portal-To-Portal Act provides that any suit to enforce a cause of action for unpaid overtime compensation or liquidated damages under the Fair Labor Standards Act

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued[.]

29 U.S.C. § 255(a).

Plaintiff has alleged that FJC employed him initially on January 20, 2004 and has not pled that he was employed by FJC after September, 2004. (Am. Compl. ¶ 54.) Indeed, Plaintiff concedes "the vast majority -- possibly all" of his FJC employment falls out of the statute of limitations period for his state law claims and "certainly outside the three-year FLSA limitation for willful violations." (Pl. Opp. Mem. at 3-6.) Thus, the allegations of the violation of the Fair Labor Standards Act are time barred under either the two or three year limitations period.

14

Goodman has urged the application of equitable tolling.  As the Second Circuit reasoned in Pearl v. City of Long Beach, 296 F.3d 76, 85 (2d Cir. 2002):

> [W]e will apply the equitable tolling doctrine 'as a matter of fairness' where a plaintiff has been 'prevented in some extraordinary way from exercising his rights,' . . . we made it clear that we had in mind a situation where a plaintiff 'could show that it would have been impossible for a reasonably prudent person to learn' about his or her cause of action.

Id. at 85 (citations omitted).

The doctrine of equitable tolling does not save Plaintiff's untimely federal overtime claims.  Goodman was aware of his alleged rights as of the end of his FJC employment in 2004 and has not shown any extraordinary circumstance that prevented him from pursuing claims against FJC after he left his employment with them.

iv. FJC's Motion To Dismiss The State Wage And Hour Claims Is Granted

To pursue an overtime claim in court under New York State Labor Law § 232, a plaintiff must allege that an administrative hearing has been convened finding in his favor that is unreviewed, and he that he has commenced the action with

15

six months of that finding.   N.Y. Labor Law § 220(8)  (2011).
"[A] private right of action for underpayment of wages does not
exist   under   Labor   Law   §   220   until   there   has   been   an
administrative   determination   pursuant   to   subdivision   (8)   that
either   has   gone   unreviewed   or   been   affirmed   in   the   claimants-
employees' favor."   Pesantez v. Boyle Envtl. Servs., Inc., 251
A.D.2d 11, 12 (N.Y. App. Div. 1998) (entering summary judgment
in employer's favor on the same grounds).   Because Goodman has
failed to exhaust this condition precedent, his New York State
overtime wage claim under New York Labor Law § 232 is barred.

Under   New   Jersey   Wage   and   Hour   Law,   the   statute   of
limitations   for   a   private   right   of   action   for   the   prevailing
wage on a public project is six years.   Troise v. Extel Communs,
784   A.2d   748,   752-53   (N.J.   Super.   Ct.   App.   Div.   2001).
Plaintiff's   is   not   alleged   to   have   worked   for   FJC   after
September,   2004.   Goodman   initiated   the   instant   action   on
November 4, 2010.   Plaintiff's New Jersey state law overtime
claims are therefore untimely.

Plaintiff's state law overtime claims are accordingly
dismissed.

16

v. FJC's Motion To Dismiss The Theft Of Services Claim Is
Granted

Goodman additionally pleads a "theft of services"
claim as to certain documents, including a systems book, that
Goodman alleges he designed and that the Port Authority
Defendants co-opted and continued to use following his
termination.  Most favorably, these claims sound in conversion
or unjust enrichment, alternate theories of recovery for
misappropriation of property.  Under New York law, "'conversion
is the unauthorized assumption and exercise of the right of
ownership over goods belonging to another to the exclusion of
the owner's rights.'"  Thyroff v. Nationwide Mut. Ins. Co., 460
F.3d 400, 403-04 (2d Cir. 2006) (quoting Vigilant Ins. Co. of
Am. v. Hous. Auth. of City of El Paso, 660 N.E.2d 1121, 1126
(N.Y. 1995)).  To state a claim for conversion in New York, a
plaintiff must allege that "(1) the party charged has acted
without authorization, and (2) exercised dominion or a right of
ownership over property belonging to another[,] (3) the rightful
owner makes a demand for the property, and (4) the demand for
the return is refused."  Seanto Exps. v. United Arab Agencies,
137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001) (internal quotation
marks and citations omitted).  To state a claim for unjust
enrichment, a plaintiff must allege "(1) that the defendant

17

benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., 448 F.3d 573, 586 (2d Cir. 2006) (quoting Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000)).

With regard to the documents, Goodman has not alleged that FJC exercised dominion or control over the property or if or how FJC has been unjustly enriched. As alleged, Plaintiff at some point while he worked for the Port Authority, Goodman produced a systems book that Port Authority retained following his termination. To the extent that Plaintiff alleges conversion or unjust enrichment as to produced during his work for FJC, those claims are time barred. N.Y. Civil Practice Law and Rules § 214(3) (conversion claims governed by a three-year statute of limitations); Ross v. Thomas, No. 09 Civ. 5631, 2010 WL 3952903, at *5 (S.D.N.Y. Oct. 7, 2010) ("While New York courts have occasionally applied a three-year statute of limitations to [an] unjust enrichment claim, they more commonly apply a six-year statute of limitations.") (footnotes and citations omitted). Accordingly, Goodman's conversion and/or unjust enrichment claims as to FJC are dismissed.

18

<u>vi. FJC's Motion To Dismiss Plaintiff's Emotional Distress Claim</u>
<u>Is Granted</u>

To state a claim for intentional infliction of emotional distress, Plaintiff must allege that FJC (1) engaged in extreme and outrageous conduct, (2) intended to cause, or in disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. <u>Howell v. N.Y.</u> <u>Post Co.</u>, 612 N.E.2d 699, 81 N.Y.2d 115, 121 (N.Y. 1993). Liability has been found only where the conduct has been "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Stuto v. Fleishman</u>, 164 F.3d 820, 827 (2d Cir. 1999) (quoting <u>Howell</u>, 81 N.Y.2d at 122); <u>Gay v. Carlson</u>, 60 F.3d 83, 89 (2d Cir. 1995) (New York Courts strictly apply elements of intentional infliction of emotional distress claim).

The only conduct alleged during Plaintiff's employment with FJC is Gulick's alleged comment in April, 2004 that "people like [Plaintiff] were the reason the rest of us have to pay high taxes." (Am. Compl. ¶¶ 54-55.) Such a comment, particularly standing alone, does not meet the "'rigorous, and difficult to

19

satisfy'" pleading standard for claims of intentional infliction of emotional distress. Newton v. City of New York, 784 F. Supp. 2d 470, 484 (S.D.N.Y. 2011) (quoting Snyder v. Phelps, --- U.S. ---, 131 S.Ct. 1207, 1222 (2011) (Alito, J., dissenting)). Even were Gulick's comment deemed sufficiently outrageous, Plaintiff's claim is barred by the one year statute of limitations. Gallagher v. Dirs. Guild of Am., Inc., 533 N.Y.S.2d 863 (N.Y. App. Div. 1988).

FJC's motion to dismiss the claim is therefore granted.

### vii. FJC's Motion To Dismiss The Port Authority Defendants' Cross-Claims For Indemnification and Contribution Is Granted

The indemnification clause pointed to by the Port Authority provides the following:

> To the extent permitted by law, the Contractor shall indemnify and hold harmless the Port Authority, its Commissioners, officers, representatives and employees from and against all claims and demands, just or unjust, of third persons (including employees, officers, and agents of the Port Authority) arising out of or in any way connected or alleged to arise out of or alleged to be in any way connected with the Contract and all other services and activities of the Contractor under this Contract and for all expenses incurred by it and by them in the defense, settlement or satisfaction thereof, including without limitation

20

thereto, claims and demands for death, for personal injury or for property damage, direct or consequential, whether they arise from the acts or omissions of the Contractor, of the Port Authority, of third persons, or from the acts of God or the public enemy, or otherwise, including claims and demands of any local jurisdiction against the Port Authority in connection with this Contract.

The Contractor assumes the following risks, whether such risks arise from acts or omissions (negligent or not) of the Contractor, the Port Authority or third persons or from any other cause, excepting only risks occasioned solely by affirmative willful acts of the Port Authority done subsequent to the opening of proposals on this Contract, and shall to the extent permitted by law indemnify the Port Authority for all loss or damage incurred in connection with such risks:

. . . The risk of claims for injuries, damage or loss of any kind just or unjust of third persons arising or alleged to arise out of the performance of work thereunder, whether such claims are made against the Contractor or the Port Authority.

(Noren Decl. ¶ 5, Ex. C. at D-21, D-22 (Dkt. No. 63).)


The indemnification clause thus excluded from FJC's assumption of risk "risks occasioned solely by affirmative willful acts of the Port Authority." (Id. at Ex. C at D-21.) The Port Authority contends that FJC failed to notify it of any discriminatory conduct engaged in by its own officers and employees and that, as such, the risk was not occasioned "solely" by the Port Authority under the indemnification clause. According to the Port Authority Defendants, FJC is therefore not

21

excused from its contractual obligation to indemnify the Port
Authority for this instant action. However, Plaintiff's claims,
except those for overtime pay, are based on alleged willful
conduct by Gulick and Parente. While a contract is interpreted
to effectuate the parties' intentions as expressed in
unequivocal language, indemnification agreements are strictly
construed to avoid reading in a duty which the parties did not
intend to be assumed. Weissman v. Sinorm Deli, 669 N.E.2d 242,
88 N.Y.2d 437, 446 (N.Y. 1996).

    The Port Authority's common law claim for
indemnification is also barred as to all save Goodman's overtime
claims, because taking Plaintiff's allegations as true, the non-
overtime allegations in the Amended Complaint are based on
alleged willful conduct by Parente and Gulick, not FJC. (Am.
Compl. ¶¶ 54-5.) Because the Port Authority Defendants are
allegedly at fault, they are not entitled to relief. Monaghan
v. SZS 33 Assocs., L.P., 73 F.3d 1276, 1284-85 (2d Cir. 1996)
(New York law supports the proposition that common law
indemnification is barred where the party seeking
indemnification was itself at fault) (citing Rosado v. Proctor &
Schwartz, Inc., 66 N.Y.2d 21, 24-25, 484 N.E.2d 1354 (N.Y.

1985); Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs., 492 N.Y.S.2d 371, 375 (N.Y. App. Div. 1985)).

With regard to Goodman's overtime claims as to FJC, those claims are not based on risks occasioned "solely by affirmative willful acts of the Port Authority" and so are not excluded from the risks assumed by FJC under the indemnification clause.   In addition, the Port Authority points to a section entitled "Costs Assumed by The Contractor" in the agreement entered into by FJC and the Port Authority, which provides:

> It is expressly understood and agreed that all costs of the Contractor of whatever kind or nature and whether imposed directly upon the Contractor under the terms and provisions hereof or in any other manner whatsoever because of the requirements of the operation of the service or otherwise under this Agreement shall be borne by the Contractor or without compensation or reimbursement from the Port Authority, except as specifically set forth in this Agreement. The entire and complete cost and expense of the Contractor's services and operations hereunder shall be borne solely by the Contractor and under no circumstances shall the Port Authority be liable to any third party (Including the Contractor's employees) for any such costs and expenses incurred by the Contractor and under no circumstances shall the Port Authority be liable to the Contractor for the same, except as specifically set forth in this Section.

(Noren Decl. ¶ 5, Ex. C. at D-12.)

23

However, as all of Plaintiff's overtime claims during FJC's contract with the Port Authority have been dismissed as time barred, Defendants' cross claims for indemnification and contribution against FJC as to those claims is dismissed as moot.[1]

Accordingly, FJC's motion to dismiss the Port Authority's cross-claims against it is granted.

**C.  Summit's Motion to Dismiss**

i. Summit's Motion To Dismiss The Federal Overtime Claim is Denied

First, Summit argues that Goodman's overtime claims should be dismissed for a failure to state a claim because Plaintiff did not specify the approximate number of overtime hours worked.  However, the Amended Complaint specifically alleges that Goodman averaged over ten hours of unpaid overtime per week.  (Am. Compl. ¶ 177-78.)  Moreover, "[w]hile often useful, such approximations are not absolutely necessary." Williams v. Skyline Auto. Inc., No. 11 Civ. 4123, 2011 WL

---

[1]     In addition, as discussed as to Summit, such an indemnification clause is regardless void as a matter of law.

5529820 (S.D.N.Y. Nov. 14, 2011) (footnote and citations omitted.)

Next, Summit contends that Goodman has failed to state an FLSA claim against it because, in Summit's view, Goodman has plead insufficient facts as to the contractor's actual or imputed knowledge that Goodman worked overtime.

An employer is liable for unpaid overtime hours if it suffers or permits an employee to work. See 29 U.S.C. § 203(g). An employer's actual or imputed knowledge that an employee is working is a necessary condition to find the employer "suffers or permits" that work. See, e.g., Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998).

Plaintiff alleges that "Summit . . . [was] made aware in timely fashion of all wage and hour violations and took no steps to remedy the actions of PATH and Port Authority management" (Am. Compl. ¶ 157), that "Defendants acknowledged at least a substantial portion of said overtime hours by signed authorizations and time sheets reflecting those hours" (id. at ¶ 181), that he "on several occasions, informed his direct employers and the union that he was not being paid for his

25

overtime" (id. at ¶ 182), and that "despite approved and signed documents showing overtime hours, he was never compensated for them."   (Id. at ¶ 5.)   The Amended Complaint additionally asserts that:

- Goodman worked for PATH and Port Authority as an employee of successively FJC, Summit, and Guardian, "who contracted to provide fire safety for the Site and associated rail stops." (Id. at ¶ 37.)
- "Despite the change in security contractors, Goodman remained in his position as chief Fire Safety Director throughout both transitions and reported directly to" Parente and Gulick." (Id. at ¶ 38.)
- "Goodman worked for PATH and the Port Authority as an employee of security companies," including Summit, "who contracted to provide fire safety for" the Site and associated rail stops. (Id. at ¶ 45.)
- He was hired by a series of contractors (FJC, Summit, and Guardian) and "worked under the direct supervision of Parente and Gulick."  (Id. at ¶ 44, 54.)
- Parente or Gulick ordered Goodman to take specific actions.  (Id. at ¶¶ 60, 87-88, 94-96.)
- PATH moved Goodman's cubicle twice. (Id. at ¶ 109.)
- Goodman designed a fire summary statistics sheet at Gulick's request, and reconfigured it, again at her request. (Id. at ¶¶ 145-47.)
- "During Goodman's five years of employment as a contract employee for PATH, there had been several projects which Gulick and Parente had asked Goodman to design and implement, on which Goodman had worked documented and approved overtime and for which he was never paid." (Id. at ¶ 149.)
- "Parente required that Goodman work overtime on a regular basis which overtime averaged over ten hours per week.  Nonetheless, Parente told . . . Goodman that the overtime was not provided for in the PATH budget and that he would not pay him for it.  Parente told Goodman that the overtime was required if Goodman wanted to keep his job.  Defendants also directly instructed Goodman to perform tasks that . . . required still more overtime hours.  Defendants acknowledged at least a substantial portion of said

overtime hours by signed authorizations and time
sheets reflecting those hours. Goodman, on several
occasions, informed his direct employers and the union
that he was not being paid for his overtime. Goodman
kept exhaustive logs reflecting both the hours worked
and those for which he was paid. Goodman was not paid
for those overtime hours despite his requests for such
payment and the defendants' duty to make those
payments." (Id. at ¶¶ 177-84.)

However, Goodman offers no additional factual
allegations that Summit specifically had knowledge or
constructive knowledge that Plaintiff was working unpaid
overtime hours. Summit argues that with regard to it,
Plaintiff's FLSA allegation is conclusory and does not meet the
standard set forth in the Iqbal and Twombly.

In his opposition papers and by way of an affidavit
and accompanying exhibits, Goodman has asserted additional facts
regarding Summit's knowledge that he worked overtime hours. (Pl.
Opp'n Mem. at 6-8 (Dkt. No. 68); Goodman Aff. (Dkt. No. 69).)
Specifically, Plaintiff provides the names of Summit employees
he allegedly notified of his unpaid overtime (Pl. Opp'n Mem. at
6; Goodman Aff. ¶ 12) and asserts additional factual allegations
for the contention that Summit and PATH were joint employers
including that "PATH had the power to fire him and they in fact
did so," and that "PATH supervised him, provided an office,
phone and office equipment, set his schedule of days worked, set

27

the rate of pay, and retained the time records from his palm-in times." (Pl. Opp'n Mem. at 8.)

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. Of course, it may also consider matters of which judicial notice may be taken under Fed.R.Evid. 201." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). Accordingly, "memoranda and supporting affidavits in opposition to a motion to dismiss cannot be used to cure a defective complaint." Branch v. Tower Air, 1995 U.S. Dist. LEXIS 16390, at *17 (S.D.N.Y. Nov. 3, 1995) (citations omitted); see also Houston v. Seward & Kissel, LLP, 2008 U.S. Dist. LEXIS 23914, *34-*35 (S.D.N.Y. Mar. 27, 2008) (rejecting plaintiffs submission of factual averments for the first time in its opposition brief); Adler v. Aztech Chas. P. Young. Co., 807 F. Supp. 1068, 1072 (S.D.N.Y. 1992) ("Although plaintiffs did submit affidavits with their opposition to this motion containing factual allegations that might suffice to state a claim against [defendants], those affidavits are inadmissible to cure the defect in a complaint when deciding a motion to

28

dismiss." (citation omitted)).   Plaintiff's additional factual assertions, provided in his opposition papers and affidavit, are inadmissible.

Absent these assertions, Plaintiff has nonetheless adequately pled Summit's knowledge or constructive knowledge that it suffered or permitted Goodman to work overtime. Plaintiff has specifically alleged that on several occasions he informed Summit that he was not being paid for overtime (Am. Comp. ¶¶ 157, 182), and that "Defendants acknowledged at least a substantial portion of said overtime hours by signed authorizations and time sheets reflecting those hours." (Id. at ¶ 181; see also id. at ¶ 5.)   These allegations sufficiently allege that Summit suffered or permitted Goodman to work.

Summit additionally asserts that Goodman's overtime claims should be limited to those after November 4, 2008, two years prior to the filing of the Complaint.   The Portal-To-Portal Act provides for a two-year statute of limitations for overtime claims or a three-year limitations period for causes of action arising out of a willful violation.   29 U.S.C. § 255. Plaintiff filed his initial Complaint on November 4, 2010.   Any claims prior to November 4, 2007 are accordingly time barred.

Summit argues that Goodman does not plead allegations which would reflect Summit's "willful violation" of the FLSA, and, as such, all alleged violations occurring prior to November 4, 2008 are time-barred.  To establish a "willful violation" of the FLSA, the employee must prove "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Whether or not a violation of the FLSA is "willful" is a fact-intensive inquiry not appropriately resolved on a motion to dismiss.  Summit's motion as to the FLSA statute of limitations bar as to claims between November 4, 2007 and November 4, 2008 is accordingly denied without prejudice to renewal.

With regard to the statute of limitations, Goodman has sought application of equitable tolling to both his federal and state overtime claims.  "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir. 1996) (citation omitted).  However, equitable tolling should only be applied in "rare and exceptional circumstances in which a party is

30

prevented in some extraordinary way from exercising his rights."
Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80
(2d Cir. 2003) (internal quotation marks and citations omitted).
Equitable tolling is generally considered appropriate in
situations where the complainant has "actively pursued his
judicial remedies by filing a defective pleading during the
statutory period, or where the complainant has been induced or
tricked by his adversary's misconduct into allowing the filing
deadline to pass." Irwin v. Department of Veterans Affairs, 498
U.S. 89, 96 (1990). Thus, courts have noted that such
extraordinary circumstances exist a plaintiff shows it would not
have been possible for a reasonably prudent person to learn of
the cause of action, see Miller v. Int'l Tel. and Tel. Corp.,
755 F.2d 20, 24 (2d Cir. 1985), or where a plaintiff shows the
defendant concealed the existence of the cause of action, see
Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311, 323 (S.D.N.Y.
2001). The relevant question when considering a request to toll
is "whether a reasonable plaintiff in the circumstances would
have been aware of the existence of a cause of action, and
despite all due diligence he was unable to obtain vital
information bearing on the existence of his claim." Lanzetta v.
Florio's Enters., Inc., 763 F. Supp. 2d 615, 622 (S.D.N.Y. 2011)
(internal quotation marks, alterations, and citations omitted).

31

In the Amended Complaint, Plaintiff alleges he brought his complaints of unpaid overtime to the attention of Summit in a timely fashion.   (Am. Compl. ¶ 157.)   If these claims are true, Plaintiff knew he had a cause of action under the FLSA. Moreover, there is no suggestion in the record that Plaintiff was unaware of Summit's alleged failure to pay him overtime, or that Summit attempted to conceal the purported unpaid overtime from him.   There is thus no basis for applying the doctrine of equitable tolling in this case.

Similarly, "[e]quitable estoppel may toll a statute of limitations where plaintiff knew of the existence of his cause of action, but a defendant's misconduct caused plaintiff to delay in bringing suit." Baba v. Grand Cent. P'shp, No. 99 Civ. 5818, 2000 U.S. Dist. LEXIS 17876, at *5 (S.D.N.Y. Dec. 7, 2000) (citing Buttry v. General Signal Corp., 68 F.3d 1488 (2d Cir. 1995)); see also Riddle v. Citigroup, 2011 WL 6015761, at *2 (2d Cir. 2011) ("Equitable estoppel arises if (i) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (ii) the plaintiff reasonably relied on that misrepresentation to her detriment." (citations and internal quotation marks omitted)).   Plaintiff

32

alleges no facts showing Summit engaged in misconduct or made a misrepresentation causing Plaintiff to delay bringing his FLSA claim, only that Parente told him "that the overtime was required if Goodman wanted to keep his job." (Am. Compl. ¶ 178-79). Since there are no facts showing Summit engaged in misconduct causing Plaintiff to delay bringing his FLSA suit, Plaintiff is not entitled to relief under the theory of equitable estoppel.

### ii. Summit's Motion To Dismiss the New York Labor Law Claim is Granted

Plaintiff alleges that Summit is liable for unpaid overtime pursuant to New York Labor Law § 232. Section 232 mandates the payment of prevailing wages (specifically overtime) to employees who perform work in connection with the care or maintenance of an existing building under a contract between a contractor and a public agency. Only after an investigation and hearing have been completed and a final determination and order have been rendered by the appropriate fiscal officer (e.g., State Commissioner of Labor) in favor of an employee may the employee institute an action against the contractor for the difference between the sum actually paid the employee as wages and the sum that should have been paid if the statute had been

33

followed. N.Y. Labor law § 235.6.  The action must be commenced within three years from the date of the filing of the order by the fiscal officer.  N.Y. Labor Law § 235.6.

Plaintiff does not allege to have filed a written complaint with the fiscal officer, nor does he allege the fiscal officer conducted a special investigation to determine compliance with Section 232.  Plaintiff also fails to allege that a final determination and order have been rendered by the fiscal officer in Plaintiff's favor, as required in order to institute a civil action against Summit.  N.Y. Labor Law § 235.6.  Having failed to exhaust his administrative remedies, Plaintiff's claims under New York Labor Law Section 232 are therefore dismissed.

By way of opposition, Plaintiff argues that New York Labor Law § 232 was "mistakenly cited in the amended complaint" and that in fact Goodman brings his claim for overtime pay under 12 N.Y.C.R.R. 142-2.2.  Such an assertion, made for the first time in opposition to a motion to dismiss, is clearly inadmissible to cure a defect in the complaint.  See Adler, 807 F. Supp. at 1072.

34

iii. Summit's Motion To Dismiss the New Jersey Causes of Action is Denied

Plaintiff's Amended Complaint alleges violations of the New Jersey State Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a et seq., the New Jersey Law Against Discrimination, and the New Jersey Whistleblower Act.  In order to avail himself of these New Jersey laws, Plaintiff must have worked in New Jersey.  See Satz v. Taipina and Novartis Pharm. Corp., Civ. No. 01-5921, 2003 U.S. Dist. LEXIS 27237, at *46 (D.N.J. Apr. 15, 2003) (collecting cases and recognizing that New Jersey courts "have consistently . . . only applied the [New Jersey Law Against Discrimination] if the plaintiff worked in New Jersey."); Buccilli v. Timby, Brown & Timby, 660 A.2d 1261, 1263 (N.J. Super. Ct. App. Div. 1995) ("Plaintiff's employment began and ended in Pennsylvania. She worked exclusively in that state and the conduct which she alleges was unlawful occurred there. Only Pennsylvania, not New Jersey, substantive law governs her claims." (citations omitted)); Mulford v. Computer Leasing, 759 A.2d 887, 891 (N.J. Super. Ct. Law Div. 1999) (emphasizing the importance of the location of employment in determining whether employees can recover compensation under New Jersey Wage and Hour Law).  "Further, a court may not apply [New Jersey Law Against Discrimination] and [New Jersey Whistleblower Act]

35

merely because an employee lives in New Jersey, particularly where the employee 'worked exclusively in [another] state and the conduct which she alleges was unlawful occurred there.'" Hayden v. Hartford Life Ins. Co., Civ. No. 10-3424, 2010 U.S. Dist. LEXIS 130079, at *12 (D.N.J. Dec. 8, 2010) (alteration in original) (quoting Busccilli, 660 A.2d at 1263).

Summit asserts that Plaintiff has not pled employment in New Jersey and as such that the New Jersey causes of action should be dismissed.  However, Plaintiff has pled that he worked in New Jersey.  The Amended Complaint alleges that PATH twice moved Goodman's cubicle and "banished" him to a "remote corner of the 10th floor"; "Parente issued a memorandum instructing the security staff of Journal Square to deny Goodman access to the building"; Goodman was informed by a security officer "in the Concourse Areas of One PATH Plaza that he was not allowed in the building"; and Parente "took back [Goodman's] master key to the 10th Floor, which [Parente] had given Goodman five years previous" – all of which allege that Goodman worked out of One PATH Plaza, which the Court takes judicial notice is located in Jersey City, New Jersey.[2] (Am. Compl. ¶¶ 109-13, 123-25, 127-29.)

_____

[2]     Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993) ("Our consideration . . . is limited to facts stated on the face of the complaint

In addition, the Amended Complaint alleges that "[o]n December 16, 2008, Goodman was once again working late.  He had taken a break and went to the PATH C-Yard to retrieve his car from the parking lot." (Am. Compl. ¶ 131.)   The Court takes judicial notice that the PATH C-Yard is likewise in Jersey City, New Jersey, and drawing the obvious inference in Plaintiff's favor, the Amended Complaint pleads that Goodman was working in One PATH PLAZA prior to retrieving his car from the PATH C-Yard, all in New Jersey.  Plaintiff accordingly has pled sufficient facts that he worked in New Jersey.[3]

Summit's motion to dismiss the claims the against it under the New Jersey State Wage and Hour Law, New Jersey Law Against Discrimination, and New Jersey Whistleblower Act is therefore denied.

iv. Summit's Motion To Dismiss The Title VII Claim Against It Is Granted

---

or incorporated in the complaint by reference, as well as matters of which judicial notice may be taken").

[3]    In their opposition papers and affidavits, both Plaintiff and the Port Authority Defendants have alleged that Goodman worked out of an office in New Jersey, and specifically the 10th floor of One PATH Plaza. (Pl. Opp'n Mem. at 6; Goodman Affidavit ¶¶ 4, 28; Port Authority Opp'n Mem. 5 (Dkt. No. 71); Noren Aff. ¶ 4 (Dkt. No. 70).)   In so far as Plaintiff and Port Authority assert new factual allegations, they are not considered.  See Adler, 807 F. Supp. at 1072.

"It is black-letter law that filing a charge with the EEOC is a prerequisite to a private civil action under Title VII." Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 389 (S.D.N.Y. 1998); see also 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(f)(1).

Plaintiff alleges he filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") against "the Port Authority and the other defendants" on November 9, 2009, but failed to specifically include Summit. (Am. Compl. ¶ 16.) Plaintiff also alleges he filed charges with the EEOC in July of 2010, but does not allege who was named in the charge. (Am. Compl. ¶ 141.) According to Summit, the contractor has no knowledge of Plaintiff filing a charge of discrimination against it with the EEOC or state agency, and the contractor has no record of being served with a charge of discrimination filed by Plaintiff.

Plaintiff argues that that this failure should be excused under the identity of interests test articulated in Johnson v. Palma, 931 F.2d 203 (2d Cir. 1991). In that case, the Court of Appeals observed that

38

> [b]ecause these charges generally are filed by parties
> not versed in the vagaries of Title VII and its
> jurisdictional and pleading requirements, we have
> taken a flexible stance in interpreting Title VII's
> procedural provisions, so as not to frustrate Title
> VII's remedial goals. Thus, courts have recognized an
> exception to the general rule that a defendant must be
> named in the EEOC complaint. This exception, termed
> the "identity of interest" exception, permits a Title
> VII action to proceed against an unnamed party where
> there is a clear identity of interest between the
> unnamed defendant and the party named in the
> administrative charge.

Johnson v. Palma, 931 F.2d at 209 (citations and internal

quotation marks omitted). In analyzing whether an "identity of

interest" exists, thereby excusing a Title VII plaintiff's

failure to name a defendant in the EEOC complaint, courts

utilize the following four-part test:

> "1) whether the role of the unnamed party could
> through reasonable effort by the complainant be
> ascertained at the time of the filing of the EEOC
> complaint; 2) whether, under the circumstances, the
> interests of a named [party] are so similar as the
> unnamed party's that for the purpose of obtaining
> voluntary conciliation and compliance it would be
> unnecessary to include the unnamed party in the EEOC
> proceedings; 3) whether its absence from the EEOC
> proceedings resulted in actual prejudice to the
> interests of the unnamed party; 4) whether the unnamed
> party has in some way represented to the complainant
> that its relationship with the complainant is to be
> through the named party."

Id. at 209-10 (quoting Glus v. G.C. Murphy Co., 562 F.2d 880,

888 (3d Cir. 1977)).

Here, the first factor weighs against Goodman as it is arguable that he could easily have included Summit in his EEOC complaint.  As to the second factor, the Amended Complaint does not sufficiently plead facts that the interests of the Port Authority and Summit are so similar as to make naming Summit unnecessary to name it in the EEOC proceedings.  See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240-42 (analyzing question of similarity of interests under the second prong of the "identity of interest" analysis by way of the four-factor test used to assess whether a parent and subsidiary operate as a single employer for Title VII purposes[4]); Ayala v. Metro One Sec. Sys., Inc., No. 2011 WL 1486559 (E.D.N.Y. April 19, 2011) (same); Brodie v. New York City Transit Auth., No. 96 Civ. 6813, 1998 WL 599710, at *6 (S.D.N.Y. Sept. 10, 1998) ("[A] similarity of interest has been found only in cases where the named and unnamed parties are aligned in some way such that efforts at conciliation with one would render similar efforts with the other unnecessary, as might be the case, for example, with regard to a parent company and its subsidiary." (citing Cook, 69 F.3d at 1241-42)).  Goodman has pled facts indicating that

---

[4]    This test considers the (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.  Cook, 69 F.3d at 1240.

Summit and the Port Authority were integrated as to his management and the interrelation of operations as to his job function. However, Plaintiff has pled no facts as to the common ownership or financial control of the two entities or the degree of centralization as to the control of their labor relations. This factor therefore does not cut in Goodman's favor. As to the third factor, because there were no EEOC proceedings, Summit "could not have been prejudiced in any way." Cook, 69 F.3d at 1242. Finally, with regard to the last factor, Goodman has not pled sufficient facts that Summit represented that his relationship with the contractor was to be through the Port Authority. The balance of these factors therefore counsels against applying the "identity of interests" exception here.

The motion to dismiss Plaintiff's Title VII claims against Summit is therefore granted.

v. Summit's Motion To Dismiss The NYSHRL and NYCHRL Claims Against It Is Granted

Claims of employment discrimination under the NYSHRL and NYCHRL are analyzed under the same McDonell Douglas applied to Title VII. See, e.g., Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010); Cruz v. Coach Stores, Inc., 202 F.3d 560, 565

41

n.1 (2d Cir. 2000) ("Our consideration of claims brought under the state and city human rights laws parallels the analysis used in Title VII claims." (citations omitted)); <u>Pilgrim v. McGraw-Hill Cos.</u>, 599 F. Supp. 2d 462, 468 (S.D.N.Y. 2009) ("[T]he standard for all Title VII, section 1981, [New York State Human Rights Law] and [NY]CHRL employment discrimination claims is the same."); <u>Forrest v. Jewish Guild for the Blind</u>, 819 N.E.2d 998, 3 N.Y.3d 295, 305 n.3, (N.Y. 2004) ("The standards for recovery under the New York State Human Rights Law are the same as the federal standards under title VII of the Civil Rights Act of 1964.")[5]  Thus, while a plaintiff need not plead a prima facie case under <u>McDonnell Douglas</u>, <u>Swierkiewicz</u>, 534 U.S. at 511-23, "at a minimum, employment discrimination claims must meet the standard of pleading set forth in <u>Twombly</u> and <u>Iqbal</u>, even if pleading a prima facie case is not required," <u>Hedges</u>, 2012 WL 101199.

---

[5]   <u>Cf.</u> <u>Lambert v. Macy's East, Inc.</u>, 2010 WL 8434889, at *11 (N.Y. Sup. Ct. April 30, 2010) ("With respect to NYCHRL, courts have traditionally stated that there is no difference between the rights granted . . . or the manner and amount of proof required to prevail under the NYSHRL and NYCHRL. However, the Restoration Act, which amended the city human rights law in a variety of ways, explicitly stated an intent for the NYCHRL to be afforded broader and more liberal construction than its state and federal counterparts, as reflected in the text and legislative history." (citations and quotation marks omitted.))

There are two exceptions to the rule that employment discrimination actions may be maintained only against a plaintiff's direct employer. See 42 U.S.C. § 2000e-2(a). First, under the "single employer doctrine," liability may be found "when two nominally separate entities are actually part of a single integrated enterprise." Lima v. Addeco, 634 F. Supp. 2d 399-400 (S.D.N.Y. 2009) (quoting Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005)) (internal quotation marks omitted); see also Gulino v. N.Y. State Educ. Dep't, 460 F.3d 361, 378 (noting use of single employer analysis where plaintiff's employment is subcontracted to another employer); Argyle Realty Assocs. v. N.Y. State Div. of Human Rights, 65 A.D.3d 273, 277-84 (N.Y. App. Div. 2009) (adopting single employer doctrine); Strauss v. N.Y. State Dep't of Educ., 26 A.D.3d 67, 67-73 (N.Y. App. Div. 2005) (same). Where two entities are deemed part of a single integrated enterprise, both entities are "subject to joint liability for employment-related acts." Laurin v. Pokoik, No. 02 Civ. 1938, 2004 WL 513999, at *4 (S.D.N.Y. March 15, 2004).

Second, under the "joint employer doctrine," liability may be found when "separate legal entities have chosen to handle certain aspects of their employer-employee relationships

43

jointly." Lima v. Addeco, 634 F. Supp. 2d at 400 (quoting Gore v. RBA Grp., Inc., No. 03 Civ. 9442, 2008 WL 857530, *3 (S.D.N.Y. Mar. 31, 2008)) (quotation marks omitted).   In this regard, the Second Circuit has "not yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII . . . . The indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry." Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 199 n.7 (citing Zheng v. Liberty Apparel Co., Inc., 355 F.3d 61, 72 (2d Cir. 2003) (articulating six-part joint employer test in FLSA context).

Even where two companies are deemed a joint employer, however, it is not necessarily the case that both are liable for discriminatory conduct in violation of Title VII.   However, an employer may be found liable for the conduct of non-employees in certain instances.   Lima v. Addeco, 634 F. Supp. 2d at 400-01. "According to the EEOC Guidelines, 'an employer may . . . be held responsible for the acts of non-employees, with respect to [discrimination] in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate or appropriate corrective action.'" Kudatzky v. Galbreath Co., No. 96 Civ.

44

2693, 1997 WL 598586, at *4 (S.D.N.Y. Sept. 23, 1997) (quoting 29 C.F.R. § 1604.11(e)).  "'[I]n determining whether to impose liability the court should consider 'the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees."' Id. at *11-*12.  Under such a theory, Goodman would have to "adduce evidence tending to show that  [Summit] either failed to provide a reasonable complaint procedure or that it knew of [the] harassment (either by co-workers or customers [or other non-employees]) and failed to take any action." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766-67 (2d Cir. 1998), abrogated in part on other grounds by National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Accordingly, here liability might conceivably be stated under either a single-employer or conduct-of-non-employee theory.  Under either, the Amended Complaint fails to state a claim.  With regard to Summit, the Amended Complaint alleges only that "Summit . . . [was] made aware in timely fashion of all civil rights and whistleblower violations within reasonable time after their occurrences" and that Summit "took no steps to remedy the behavior of PATH and Port Authority management." (Am. Compl. ¶ 155-56.)  Such a bare-boned assertion regarding

Summit's knowledge of the alleged discriminatory conduct and failure to act does not meet the standard set forth in Iqbal and Twombly.  As discussed above, Goodman has likewise failed to allege sufficient facts that Summit and the Port Authority acted as a single employer.

By way of his opposition papers and affidavit, Goodman has asserted additional facts to support both Summit's knowledge of the alleged discriminatory actions taken by Gulick and Parente and the integration of Summit and the Port Authority's labor management and Goodman's belief thereof.  (Goodman Aff. (Dkt. No. 69).)  Specifically, Plaintiff provides names of Summit employees he allegedly notified of the discriminatory conduct.  (Goodman Aff. ¶ 30-32.)  Such averments are inadmissible to cure a defective complaint.  Adler, 807 F. Supp. at 1072.

Plaintiff's NYSHRL and NYCHRL claims are therefore dismissed.

vi. Summit's Motion To Dismiss The Federal Railroad Safety Act Claim Is Granted

46

Plaintiff alleges that Summit violated the Federal Railroad Safety Act. (Am. Compl. ¶¶ 6, 169.) However,

> Nothing in the [FRSA] or its legislative history indicates an intention to create a private right of action. Indeed, enforcement powers under the FRSA are vested solely with the Secretary of Transportation and, under certain conditions, the States or the Attorney General. As such, every court to address the issue has found that there is no express or implied private remedy under the FRSA.

Walsh v. CSX Transp., Inc., 2009 WL 425817, at *2 (N.D.N.Y Feb. 18, 2009) (citations and footnote omitted). As such, Plaintiff's FRSA claim is dismissed.

vii. Summit's Motion To Dismiss the Theft Of Services Claim Against It Is Granted

Goodman additionally pleads a "theft of services" claim as to certain documents he alleges he designed and that the Port Authority Defendants co-opted and continued to use following his termination. As previously discussed, these claims sound in conversion or unjust enrichment. Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." Thyroff, 460 F.3d at 403-04 (internal quotation marks and citation omitted). To state a

47

claim for conversion in New York, a plaintiff must allege that "(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another[,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." Seanto Exps., 137 F. Supp. 2d at 451 (internal quotation marks and citations omitted).  To state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr., 448 F.3d at 586 (internal quotation marks and citations omitted).

With regard to the documents, Goodman has not alleged that Summit exercised dominion or control over the property or if or how Summit has been unjustly enriched.  As alleged, the Port Authority Defendants co-opted and continued to use Goodman's documents following his termination.  Accordingly, Goodman's conversion and/or unjust enrichment claims as to Summit are dismissed.

viii. Summit's Motion To Dismiss the Intentional Infliction of Emotional Distress Claim Against It Is Granted

48

As previously noted, to state a claim for intentional infliction of emotional distress, a plaintiff must allege that the defendant (1) engaged in extreme and outrageous conduct, (2) intended to cause, or in disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and injury, and (4) severe emotional distress. Howell, 81 N.Y.2d at 121.

Plaintiff fails to allege any such conduct attributable to Summit, asserting only that Summit was aware of actions taken and statements made by other defendants and that Summit took no steps to remedy them. (Am. Compl. ¶¶ 155-57.) Regardless, even were this deemed to be sufficiently outrageous, Plaintiff's claim is barred by the one year statute of limitations. Gallagher v. Dirs. Guild of Am., Inc., 533 N.Y.S.2d 863 (N.Y. App. Div. 1988).

Summit's motion to dismiss the claim for intentional infliction of emotional distress is granted.

**D.  Summit's Motion for Judgment on the Pleadings as to the Cross-Claims is Granted in Part**

49

Summit has moved for judgment on the pleadings as to the cross claims asserted by the Port Authority. The Port Authority Defendants filed no opposition to Summit's motion. For the reasons set forth below, Summit's motion is granted in part and denied in part.

i. Summit's Motion To Dismiss Port Authority's Contractual Indemnification Claim for Alleged Violations of the FLSA and New York Labor Law Is Granted

Summit asserts that Port Authority's contractual indemnification claim must fail because there is no right to indemnification under the FLSA. For this proposition, Summit cites Gustafson v. Bell Atl. Corp., 171 F. Supp. 2d 311, 327-328 (S.D.N.Y. 2001) (citing Herman v. RSR Sec. Servs., 172 F.3d 132, 144 (2d Cir. 1999)). Gustafson held that "[a]llowing indemnification in cases [where an employer seeks indemnification for FLSA liability from its contractor pursuant to a contractual indemnification clause] would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute." Id. at 328. Gustafson applied the same reasoning to claims brought under New York Labor Law. Id. at 328, n.8. In so holding, Gustafson extended Herman, 172 F.3d 132, in which the Second Circuit held that no right to indemnification or contribution exists under the FLSA

50

absent any contract, to nullify a negotiated indemnification clause. While some courts in this circuit have enforced such contractual indemnification clauses as to federal and state wage and hour claims, see Bogosian v. All American Concessions, No. 06 Civ. 1633, 2011 WL 4460362, at *4 (E.D.N.Y. Sept. 26, 2011) (enforcing contractual indemnification clause as to contractor); Amaya v. Garden City Irr., Inc., No. 03 Civ. 2814, 2011 WL 564721 (E.D.N.Y. 2011) (enforcing indemnification clause for amount paid by insurance company in settlement of plaintiffs' wage and hour claims), this Court is in agreement that "a holding that the indemnification clause is enforceable would indeed mean that employers would have little reason to be concerned over . . . [compliance] with the statutorily mandated and unwaivable overtime pay requirements of the FLSA, knowing full well that if they are later found to have violated such requirements, such employers would be totally compensated for any injuries resulting from such action." Local 1035, Int'l Bhd. Of Teamsters v. Pepsi Allied, 99 F. Supp. 2d 219, 221 (D.Conn. 2000) (dismissing employer's counterclaim to enforce indemnification clause in collective bargaining agreement as to overtime violations under the FLSA).

51

Accordingly, Summit's motion to dismiss Port Authority's cross-claim for contractual indemnification for claims brought under the FLSA and New York Labor Law is granted.

## ii. Summit's Motion To Dismiss The Indemnification Claim For Violations Of Title VII, the NYSHRL the NYCHRL Is Granted

"It is axiomatic that an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of the contract." Gibbs-Alfano, 281 F.3d at 19 (citing Weissman, 88 N.Y.2d at 446). The contract between Port Authority and Summit expressly excludes from indemnification "risks occasioned solely by affirmative willful acts of PATH." (Piacentini Aff. ¶¶ 2-3, Ex. A (Dkt. No. 83).) Since each of Plaintiff's discrimination claims against Port Authority alleges the Port Authority Defendants engaged in intentional conduct, Port Authority is not entitled to contractual indemnification based on its contract with Summit.

Moreover, a party may not be contractually indemnified for violations of Title VII, NYSHRL and NYCHRL where the party seeking indemnification engaged in intentional discrimination. See Gibbs-Alfano v. Burton, 281 F.3d 12, 21-23 (2d. Cir. 2002) (claims for contractual indemnification barred under New York

law where contract purports to indemnify a party for damage flowing from intentional causation of injury; contractual indemnification barred under federal public policy where there exists either a factual finding of discriminatory conduct by indemnitee or set of circumstances strongly supporting such conduct); Stamford Bd. of Educ. V. Stamford Educ. Assoc., 697 F.2d 70, 73-75 (2d Cir. 1982) (federal public policy bars contractual indemnity claims for Title VII liability where there exists either a factual finding of discriminatory conduct by the indemnitee or, at least, a set of circumstances that strongly suggests discriminatory conduct by the indemnitee). Furthermore, under New York law, indemnification agreements are unenforceable as violative of public policy to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury. Austro v. Niagara Mohawk Power Corp., 487 N.E.2d 267, 66 N.Y.2d 674, 676 (N.Y. 1985). New York "[p]ublic policy . . . forbids a party's attempt to escape liability, through a contractual clause, for damages occasioned by grossly negligent conduct." Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Services, Ltd., 611 N.E.2d 282, 81 N.Y.2d 821, 823 (N.Y. 1993) (internal quotation marks omitted).

The Amended Complaint alleges intentional discrimination in violation of Title VII, the NYSHRL, and the NYCHRL. In the event Plaintiff goes to trial and succeeds on his discrimination claims against the Port Authority Defendants, Goodman necessarily would have to prove that Port Authority intentionally discriminated against him. Since intentional conduct on the part of Port Authority would render a contractual indemnification clause unenforceable, Defendants' cross-claim for contractual indemnification based on Port Authority's potential future liability under Title VII, the NYSHRL, and the NYCHRL is dismissed.


iii. Summit's Motion To Dismiss the Port Defendants' Third Cross-Claim For Common Law Indemnification Is Granted

"New York case law supports a proposition that . . . common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff." Monaghan, 73 F.3d at 1284; see also Perri v. Gilbert Johnson Enters., Ltd., 14 A.D.3d 681, 684-85 (N.Y. App. Div. 2005) ("To establish a claim for common-law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove

54

that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident.'" (quoting Correia v. Professional Data Mgt., 259 A.D.2d 60, 65 (N.Y. App. Div. 1999)); Trustees of Columbia Univ., 109 A.D.2d at 453 ("Since the predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee, it follows that a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine." (citing Rock v. Reed-Prentice, 39 N.Y.2d 34 (N.Y. 1976)).

Plaintiff alleges two non-statutory tort claims against the Port Authority conversion and intentional infliction of emotional distress. In the event Plaintiff succeeds on either of these claims against the Port Authority, Plaintiff necessarily would have to prove the Port Authority acted intentionally or willfully and was therefore at fault. Since common-law indemnity is barred where the party seeking indemnification is at fault, the Port Defendants' cross-claim for contractual indemnification under "any tort theory" is dismissed.

iv. Summit's Motion To Dismiss Port Authority's Fourth Cross-Claim For Contribution Is Granted

55

A party can state a cause of action for contribution under New York law where "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death." N.Y. C.P.L.R. § 1401. This rule is narrowly construed to permit contribution only for actions sounding in tort. <u>United States ex rel. Hosp.</u>, No. 04 Civ. 2483, 2011 U.S. Dist. LEXIS 51648, at *16-*23 (E.D.N.Y. May 13, 2011). Plaintiff alleges two tort claims against Port Authority: conversion and intentional infliction of emotional distress.

Plaintiff alleges the Port Authority co-opted and continues to use a "systems book" which Goodman designed and published on his own time. Plaintiff directs all of his factual allegations concerning this theft at Port Authority, asserting that:

> 153. While Goodman worked for the Port Authority, he used a system book that he designed and published on his own time. The book was the sole property of Goodman and the systems were developed in conjunction with his course of study at school. After his termination, Port Authority retained possession of Goodman's work and co-opted the documents and drawings and, upon information and belief, continued to use them. The claim of continuing use is based on the

56

reports of former staff members who worked under Goodman and continue to work at Port Authority sites.

154. Port Authority owes Goodman for his unpaid overtime and also owes damages for unauthorized and continued use of Goodman's systems book, which included diagrams and procedural guidelines . . . .

185. Even after his termination, Port Authority and PATH co-opted the systems and publications owned by Goodman and continued to use them in their daily operations without providing compensation to Goodman.

(Am. Compl. ¶¶ 153-154, 185.)   The pleadings contain no allegations that Summit played any role in the alleged conversion of Plaintiff's systems book or other documents. Accordingly, since Summit cannot be held liable for conversion, and contribution under New York C.P.L.R. § 1401 is only appropriate where two parties are both found liable for the same injury, Port Defendants' cross-claim for contribution is dismissed.

Contribution for Plaintiff's claim for intentional infliction of emotional distress is likewise barred.   As previously discussed, in a cause of action for intentional infliction of emotional distress, a plaintiff must plead: (1) extreme and outrageous conduct; (2) intended to cause, or in disregard of a substantial probability of causing, severe emotional distress; (3) a causal relationship between the

conduct and the resulting injury; and (4) severe emotional distress. Howell, 81 N.Y.2d at 121. In this regard, liability has been found only where the conduct has been "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Stuto, 164 F.3d at 827 (quoting Howell, 81 N.Y.2d at 122).

Plaintiff's Amended Complaint fails to directly attribute any affirmative "extreme or outrageous" conduct intended to cause, or in disregard of a substantial probability of causing, severe emotional distress. All alleged behavior constituting Plaintiff's emotional distress claim are attributed to either Parente or Gulick, employees of the Port Authority. Accordingly, since Summit cannot be held liable for intentional infliction of emotional distress, and contribution under New York C.P.L.R. § 1401 is only appropriate where two parties are both liable for the same injury, Port Defendants' cross-claim for contribution is dismissed.

58

## III. Conclusion

For the reasons set forth above, FJC's motion to dismiss is granted, Summit's motions to dismiss and for judgment on the pleadings as to the cross claims are granted in part and denied in part.  Twenty days leave to replead is granted.

It is so ordered.

New York, NY
February 27, 2012

ROBERT W. SWEET
U.S.D.J.

59