UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------X

VINCENT GOODMAN,

               Plaintiff,

   - against -

THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY TRANS-
HUDSON CORP., MARTHA GULICK, AND
DONALD PERENTE,

               Defendants.

----------------------------------

10 Civ. 8352 (RWS)

OPINION



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9-20-13

A P P E A R A N C E S:

       Attorney for Plaintiff VINCENT GOODMAN

       GEROSA & VANDERWOUDE
       770 Farmers Mills Road
       Carmel, NY 10512
       By:  Neil VanderWoude, Esq.

       Attorneys for Defendants PORT AUTHORITY OF
       NEW YORK ET AL.

       THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY
       225 Park Avenue South, 13th Floor
       New York, NY 1003
       By:  Kathleen Gill Miller, Esq.
           James M. Begley, Esq.
           Isaac M. Rethy, Esq.

**Sweet, D.J.**

Defendants Port Authority of New York and New Jersey ("Port Authority"), Port Authority Trans-Hudson Corporation ("PATH"), Martha Gulick ("Gulick") and Donald Parente ("Parente") (collectively "Defendants" or the "Port Authority Defendants") move for summary judgment as a matter of law pursuant to Federal Rule 56 of the Federal Rulers of Civil Procedures against Plaintiff Vincent Goodman ("Plaintiff" or "Goodman").

For the reasons set forth below, Defendants' motion for summary judgment is granted in its entirety.

## I. PROCEDURAL HISTORY

Goodman filed this action on November 4, 2010, asserting claims against the Port Authority Defendants and his former employers, FJC Security Services, Inc. ("FJC"), Summit Security Services, Inc. ("Summit"), Guardian Services Industries, Inc. ("Guardian") and defendant Service Employees International Union, Local 32BJ ("Local 32BJ" or the "Union") under Title VII of the Civil Rights Act of 1964 ("Title VII"), the National Transit Systems Security Act ("NTSSA"), the New York State Human Rights Law ("NYSHRL"), the New Jersey Law

1

Against Discrimination ("NJLAD"), the New York City Human Rights Law ("NYCHRL"), the Federal Whistleblower Act, the New Jersey Whistleblower Act, and for failure to represent and theft of services.

On February 25, 2011, Goodman filed an Amended Complaint adding claims for unpaid overtime under the Fair Labor Standards Act ("FLSA") and New York Labor Law § 232.

On April 12, 2011, Defendant, Local 32BJ, filed a Motion to Dismiss the Amended Complaint.  On August 4, 2011, this Court issued an Order granting Local 32BJ's Motion to Dismiss the Amended Complaint in its entirety, and granted Goodman leave to replead.

On June 6, 2011, Goodman's claims against Guardian were settled and dismissed.  On February 29, 2012, this Court issued an Order granting FJC's Motion to Dismiss in its entirety, and on April 26, 2012 this Court granted Summit's motion to dismiss in its entirety.

On March 20, 2012, Plaintiff filed its Second Amended Complaint, asserting claims against the Port Authority

2

Defendants under Title VII, NYSHRL, NYCHRL, the NJLAD, the
NJCEPA, the FLSA, the New Jersey State Wage and Hour Law, the
New Jersey Prevailing Wage Law, and alleging conversion, unjust
enrichment, and intentional infliction of emotional distress.

On June 28, 2013, the Port Authority Defendants filed
for summary judgment.  This motion was heard and marked fully
submitted on September 11, 2013.

## II.   BACKGROUND

The Port Authority is a bi-state agency created by
Compact between the States of New York and New Jersey with
approval of the United States Congress.  (Ch. 154, Laws of N.Y.,
1921; Chi. 151, Laws of N.J., 1921; 42 U.S. Stat. 174, 1921.)
Pursuant to the 1921 Compact and subsequently enacted bi-state
legislation, the Port Authority operates an interstate
transportation network between New York and New Jersey and
airports, ports, terminals and the World Trade Center ("WTC").
These facilities include the PATH train, which is a wholly-owned
subsidiary of the Port Authority.  (N.Y. Unconsol. Laws § 6861.)

During the time period covered in the complaint, from
January 2004 to February 2009, the Port Authority was actively

3

involved in the rebuilding of the PATH station at the WTC.
Throughout this period, PATH hired three successive contractors
to supply fire safety personnel at the temporary PATH WTC
Station (the "Site").  These contractors were FJC, who had the
contract from December 2003 until August 16, 2004, Summit, who
replaced FJC until December 16, 2008, and Guardian, who
succeeded Summit on that date and remained through the relevant
period of the complaint.

Each of these three companies employed Goodman as the
Senior Fire Safety Director, where he worked at the Journal
Square Transportation Center ("Journal Square") but went to the
Site to do inspections.  Goodman was first hired by FJC in
December 2003 as the Senior Fire Safety Director for the Site.
He worked primarily from his office at Journal Square in Jersey
City, New Jersey.  When Summit took over the contract effective
on August 16, 2004, it hired Goodman as the Senior Fire Safety
Director until December 16, 2008, at which time Guardian was
awarded the contract and hired Goodman in his same capacity and
employed him until February 13, 2009.  The Fire Safety Directors
worked at the Site, monitoring the Fire Command Panel and
reporting any operational problems with the panel directly to
Goodman.  (Deposition of Vincent Goodman, "Goodman Tr."; at 68-

69; Exhibit C to Declaration of Kathleen Gill Miller ("Miller Decl.").)  Goodman's job as Senior Fire Safety Director was to ensure that a Fire Safety Director was at the post to monitor the Fire Command Panel at all times.  (Deposition of Donald Parente, "Parente Tr."; at 16.)  Guardian terminated Goodman's employed at PATH on February 13, 2009.

### III. STANDARD OF REVIEW

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 338 (2d Cir. 2004).  In determining whether a genuine issue of material fact does exist, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Gibbs-Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir.2002). In addition, courts do not try issues of fact on a motion for summary judgment, but rather, determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of showing that there are no material facts in dispute, *Adickes v. S.H. Kress & Co.,* 398 U .S. 144, 157 (1970), and can discharge this burden by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325. The nonmoving party then must come forward with "specific facts showing that there is a genuine issue for trial," F.R.C.P. 56(e), as to every element "essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "[T]he non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir. 1999) (quotation omitted).

## IV. GOODMAN'S TITLE VII CLAIMS ARE TIME-BARRED OR OTHERWISE INACTIONABLE

Plaintiff brings Title VII claims for a hostile work environment and retaliation against the Port Authority Defendants for various incidents beginning in 2004. Specifically, Goodman alleges (1) that Gulick made racially

discriminatory remarks in 2004 that "people like you are the reason the rest of us have to pay high taxes" (Goodman Tr. at 516-20); (2) that a hostile work environment was created by Gulick in June of 2008 when she printed a Ku Klux Klan manual on a printer in a public area of the office, though she explained it was for research about a rally to be held near a PATH station and (3) that Goodman found an article about a convicted Klansman purportedly named "Gulick" in June 2007, but acknowledges that he later learned that the name in the article had been falsified and was not in fact named "Gulick." (Goodman Tr. at 528-30.) Goodman also alleges that he was terminated in retaliation for his complaining about Gulick's printing of the KKK handbook in June of 2007, alleging in support (1) that his desk was moved twice, although to the same floor with the same equipment, (2) that PATH took away his parking pass, and (3) that when Guardian took over the contract, their new procedures required him to check in at the desk. (Goodman Tr. at 531-35.)

As an initial matter, Goodman's Title VII claims are time-barred. The Second Circuit has held that an EEOC charge against Port Authority must be filed within 180 days of the alleged discriminatory act. *Dezaio v. Port Authority of NY and NJ*, 205 F.3d 62, 64 (2d Cir. 2000). Thus, Goodman's alleged

7

incidents, all of which occur before December 31, 2008, are time-barred as having occurred more than 180 days after Plaintiff filed his EEOC charge on June 28, 2010.

Goodman seeks to elude this 180-day requirement by availing himself of the 300-day time period, asserting that he is an external, not internal, employee of the Port Authority and thus that the 300-day time period applies.  (Goodman Opposition Brief, "Opp. Br."; at 17-18 ("Goodman was never an employee of PATH").)  Even if the 300-day time period were applicable and even if the continuous conduct doctrine were appropriate, Goodman's EEOC was filed after this deadline.[1]  Regardless, Goodman is incorrect that the 300-day time period applies based on his external employee status.[2]  To the contrary, the 180-day

---

[1]  Goodman's "employment" ended with Port Authority on February 13, 2009, and thus he would have needed to file a charge with the EEOC by August 13, 2009 to meet the 300-day requirement.  Goodman incorrectly cites his EEOC as having been filed on December 3, 2009, but this was merely an unsigned questionnaire which was not even produced.  The correct date for the EEOC filing, formally recorded, is June 28, 2010, as Goodman's counsel stipulated at his deposition.  (Goodman Tr. at 513 ("This action was initiated in September or August of 2009.  The charge was finally filed on [June 28, 2010].").)  The continuing violation doctrine, even if it were applicable, therefore also does not save Goodman's claim.  Regardless, the 300-day deadline is not applicable.

[2]  Goodman mistakenly cites *Ageson v. Catherwood*, 26 N.Y.2d 521, 525 (1970), to support his use of the 300-day time period.  However, in *Ageson*, the Court of Appeals held that New York's wage law did not apply to the Port Authority because its personnel policies must be jointly controlled by the two states. The Court of Appeals did note in dicta that the external operations of the

8

limitations period applies to Port Authority by virtue of its own status as a government agency, and does not depend on the charging party's status.  *DeZaio v. Port Authority of New York and New Jersey*, 205 F.3d 62, 64 (2d Cir. 2000) (180-day time period applies to Port Authority regardless of charging party status or laws of state where alleged discrimination occurred); *see also Chin, et al v. The Port Authority of New York and New Jersey*, 685 F.3d 135, 146 (2d Cir. 2012).  The 180-day time period is thus applicable, and Goodman's claims are time-barred.

In any event, Goodman's Title VII claims for hostile work environment and for retaliation are both without merit.  To establish a hostile work environment claim, the plaintiff must show that (1) he or she was subjected to harassment because of his or her membership in a protected class that was so severe or pervasive as to alter the conditions of his or her employment; and (2) there is a specific basis for imputing the harassment to the defendant.  *Little v. National Broadcasting Company, Inc.*, 210 F. Supp. 2d 330 (S.D.N.Y. 2002) (citing *Tomka v. Seiler*, 66 F.3d 1295, 1305 (2d Cir. 1995)); *see also Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993).

---

Port Authority may be subject to singe state laws *if* they involve health or safety, but Goodman falls into neither category.

Goodman's three alleged instances of hostile work
environment do not rise to the required level of "severe or
pervasive."   First, Gulick's alleged comment to Plaintiff that
"people like you are the reason the rest of us have to pay high
taxes," is "insufficiently severe or pervasive to support" a
hostile work environment claim and Goodman's personal belief
that Gulick's statement means people of color does not support
an inference of intentional discrimination.  *See Goodman v. Port
of Authority of NY and NJ*, 850 F. Supp. 2d 363, 375 (S.D.N.Y.
2012); *see also Holt v. KMI-Continental*, 95 F.3d 123, 130 (2d
Cir. 1996).  Second, the allegedly race-based incident in 2007,
when Gulick printed the official Handbook for the KKK, was
indisputably done because Gulick was asked to do research for a
rally near PATH.  Further, after Goodman reported the printing,
PATH's Office of Equal Opportunity ("OEO") organized a meeting
with Gulick and Goodman, where Gulick apologized.  When Goodman
reported to the Manager of the OEO that Gulick threatened
Goodman in this meeting, the Manager advised Goodman that she
would speak to Gulick and give her sensitivity training.  The
Port Authority Defendants thus provided a means for Goodman to
seek assistance and an outlet for mediation and future training.
Third, the isolated incident of a falsified article about a
Klansman is not attributed to any of the Defendants.  (Goodman

10

Tr. at 530.)  These incidents, which lack hostility, do not
constitute physical threats, and did not interfere with
Goodman's work performance, are insufficient as a matter of law
to establish a hostile work environment.  *See Alfano v.
Costello*,294 F.3d 365 (2d Cir. 2002); *see also Kotcher v. Rosa &
Sullivan Appliances Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992).


          Goodman's claim of retaliation is similarly
unsupported.  In order to establish retaliation based on a
protected activity under Title VII, a plaintiff must show a
causal connection between the protected activity and the alleged
or adverse employment actions.  Proof of causation can be shown
either (1) indirectly, by showing that the protected activity
was followed closely by discriminatory treatment, or (2) through
other circumstantial evidence such as disparate treatment of
fellow employees who engaged in similar conduct.  *Gordon v. N.Y.
City Bd. Of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  A
plaintiff asserting a retaliation claim under Title VII must
prove that claim by the traditional principles of but-for
causation.  *See, e.g.*, *Shah v. New York State Department of
Civil Service*, 341 Fed. App. 670 (2d Cir. 2009) (a one year gap
between protected activity and first alleged retaliatory act is
too large to establish but-for causation).

11

Goodman bases his Title VII retaliation claim upon the fact that (1) his desk was moved twice, although to the same floor with the same equipment, (2) PATH took away his parking pass, and (3) when Guardian took over the contract, their new procedures required him to check in at the desk, all allegedly in retaliation for his complaining about Gulick's printing of the KKK handbook in June of 2007.  (Goodman Tr. at 531-35.) These allegations do not support or even allude to retaliatory animus, or disparate treatment of fellow employees.  Nor is there a causal connection in this case; the gap between when Goodman complained about Gulick in April or May of 2007 and his termination in February of 2009 is over two years.  *See McIntyre v. Longwood Central School District*, 2010 U.S. App. LEXIS 11393 (2d Cir. 2010) (dismissing based on one year time gap and fact other black males in plaintiff's group received higher raises than plaintiff).

Further, Goodman's allegations relating to his desk, parking pass and checking in protocol demonstrate only standard activities resulting from a new manager, and regardless do not alter the conditions or terms of his employment such that they amount to adverse action under Title VII or could constitute continuing treatment for the purposes of but-for causation.  *See*

12

*Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 87 (2d Cir. 2001) (holding that an employee who was transferred from one office to another and physically removed from her first office was not "retaliated" against because employee failed to "allege what tangible adverse effect this incident had on the terms and conditions of her employment").

Goodman's Title VII claims are therefore both dismissed in their entirety.

### V. GOODMAN'S FLSA CLAIMS ARE TIME BARRED AND WITHOUT MERIT

Goodman alleges that the Port Authority Defendants are liable for unpaid overtime wages and retaliation under the FLSA. As with Goodman's Title VII claims, the FLSA claims are time-barred by the applicable statute of limitations.  The Portal-To-Portal Act provides that any suit to enforce a cause of action for unpaid overtime compensation under the FLSA must be commenced within two years after the cause of action accrued. 29 U.S.C. § 255(a).  The Port Authority Defendants employed Goodman from January 20, 2004 through February 13, 2009. Goodman did not file a complaint under the FLSA until February 25, 2011, over two years after the cause of action accrued, and the FLSA claims are thus barred.

While a willful violation extends the FLSA's statute of limitations from two years to three, *see* 29 U.S.C. § 255(a), Goodman has failed to allege any facts supporting such an extension.  To establish a "willful violation" of the FLSA, the employee must prove "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  Unreasonable behavior, if not reckless, is insufficient to be deemed "willful" under the statute.  *See McLaughlin*, 486 U.S. at 134.

Goodman offers no support for his conclusory allegations that the Port Authority Defendants willfully or recklessly disregarded the FLSA with respect to his unpaid overtime.  To the contrary, Goodman testified at his deposition that he was promptly paid for every weekly time report prepared by him from November 4, 2007 to December 20, 2008, as well as all approved overtime that he worked.  (Goodman Tr. at 92-285.) Further, Goodman knew that overtime that was to be charged to the Port Authority required prior approval by Parente or Gulick. (Goodman Tr. at 103-04.)  Goodman contends that the violation was nonetheless willful because "Parente made it clear that he expected Goodman to work overtime, including evenings and

14

weekends, and not charge for it, if Goodman wished to keep his job." (Goodman Tr. at 585-86.) Goodman also contends that Parente was aware of unpaid overtime he worked based on personal logs he kept on his computer, not affiliated with PATH or Port Authority, and e-mails which he allegedly sent to Parente documenting these logs but which Goodman has failed to produce. (Goodman Affidavit, "Goodman Aff."; ¶¶ 25, 38.)

These allegations are either unsupported or directly contradicted by Goodman's own testimony, for instance when he stated in his deposition that he did not deliver hard copies of or e-mail the logs to Parente and could not recall showing, sending or discussing any specific daily activity log he created on his computer with Parente. (Goodman Tr. at 382.) Goodman did subsequently testify that he discussed his time entries on those logs with Parente 10 or 20 times, but he could not specify any dates or details of these conversations or produce the logs themselves. (Goodman Tr. at 443.) Regardless, nowhere in his affidavit does Goodman assert that he had actual knowledge that Parente reviewed these logs or those portions of the logs that contained his purported overtime records. Even taken together drawing all reasonable inferences in favorable of Plaintiff, these unsubstantiated allegations cannot support the conclusion

15

that Parente knew of or recklessly disregarded Goodman's personal logs of overtime hours, purposely withheld valid overtime pay from Plaintiff, or threatened Goodman into not submitting overtime records.

Nor can Goodman's unpaid overtime claim be saved, as Plaintiff asserts, under a related-back theory.  Rule 15(c) of the Federal Rules of Civil Procedure allows an "amendment to a pleading [to] relate back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out - or attempted to be set out - in the original pleading."  "For a newly added action to relate back, 'the basic claim must have arisen out of the conduct set forth in the original pleading.'" *Tho Din Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 36 (2d Cir. 2002) (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). Whether a new claim in an amended complaint relates back to the original complaint lies in the discretion of the district court. *Wilson v. Fairchild Republic Co. Inc.*, 143 F.3d 733, 738 (2d Cir. 1998).

Goodman alleges that the related-back doctrine is appropriate since the issue of unpaid overtime was raised in his

16

original complaint, filed November 4, 2010, and in particular in
the notice of claim received December 7, 2009, which stated that
Goodman was complaining of overtime.  The initial complaint,
though, relates to Port Authority Defendants' alleged conversion
of Goodman's manuals, and nowhere mentions Defendants' refusal
to pay overtime based on his personal logs or provides any
allegations regarding threats by Parente if Goodman requested
overtime pay.  (Compl. ¶¶ 103-06.)  Goodman's current FLSA
claims are thus based on an "entirely distinct set" of factual
allegations and will not relate back.  *Nettis v. Levitt*, 241
F.3d 186, 193 (2d Cir. 2001).

Even if the FLSA claims were not procedurally barred,
Goodman's claims for unpaid overtime and retaliation are both
without merit.

Goodman's overtime claim fails because his damages
under this theory are *de minimis*.  In *Sign v. City of New York*,
5224 F.3d 361 (2d Cir. 2008), the Second Circuit considered
three factors in determining whether otherwise compensable time
should be considered *de minimis*: (1) the practical
administrative difficulty of recording additional time; (2) the
size of the claim in the aggregate; and (3) whether the

17

claimants performed the work on a regular basis. *Id.*  Here,
Goodman complains of not being paid three hours in the relevant
two year period or $115.98 in overtime.  Specifically, Goodman
alleges that he was owed 2.25 hours of overtime for the week
ending November 8, 2008.  To the contrary, Summit's pay records
show that he was paid for 3 hours of overtime for that week.
(Miller Decl.)  The remaining alleged owed overtime amounts only
to $29.34, and is therefore indisputably *de minimis*.  (*Id.*)

Even assuming that the overtime claim was not *de
minimis*, Goodman's claim is still without merit.  To establish
liability under the FLSA on a claim for unpaid overtime, an
employee must prove the amount of uncompensated work actually
performed and that the employer had actual or constructive
knowledge of that work.  *Kuebel v. Black & Decker Inc.*, 643 F.3d
352 (2d Cir. 2001); *see also Holzapfel v. Town of Newburgh*, 145
F.3d 516, 524 (2d Cir. 1998) (an employer's actual or imputed
knowledge that an employee is working is a necessary condition
to find employer "suffers or permits" that work).  In this case,
Goodman has not provided any records proving he actually
performed the work in question, including his personal logs that
purportedly document this overtime, or even adequately alleged
that the Port Authority Defendants had actual or constructive

18

knowledge that he was working unpaid overtime hours.[3]  *See supra*
IV.  In fact, Goodman does not dispute that the official time
records he submitted to Guardian do not show any unpaid
overtime.

Goodman's retaliation claim under the FLSA is
similarly unsupported.  The FLSA provides that it is "unlawful
for any person . . . to discharge or in any other manner
discriminate against any employee because such employee has
filed any complaint or instituted or caused to be instituted any
proceeding under [FLSA]."  29 U.S.C. § 215(a)(3).  FLSA
retaliation claims are subject to the three-step burden-shifting
framework established by *McDonnell Douglas Corp. v. Green*, 411
U.S. 792 (1973): a plaintiff alleging retaliation under FLSA
must first establish a *prima facie* case of retaliation by
showing (1) participation in protected activity known to the
defendant, like the filing of a FLSA lawsuit; (2) an employment
action disadvantaging the plaintiff; and (3) a causal connection

---

[3] Goodman attempts to rely on a palm-in-palm out system and allege that these
records would support his claim for overtime, though he is aware that they
cannot be produced.  However, the palm-in-palm-out system used at Journal
Square was not a time-keeping system, but rather to restrict access to
various buildings to employees.  (Barbara Iorio Deposition, "Iorio Dep."; at
10-11.)  Moreover, the old palm-in-palm-out system crashed in 2006 and all
data was lost.  Further, it is undisputed that Parente and Gulick did not
have access to this system and therefore could not be charged with knowledge
of overtime based on these records.

19

between the protected activity and the adverse employment
action.  *See also Cruz v. Coach Sotres, Inc.*, 202 F.3d 560, 566
(2d Cir. 2000).  The burden then shifts to the employer to show
a legitimate, nondiscriminatory reason for the employment
action.  *Azkour v. Little Rest Twelve, Inc.*, 2012 WL 402049
(S.D.N.Y. Feb. 7, 2012).

Here, Goodman fails to establish even the first
requirement: Goodman claims he was retaliated against for
whistle blowing in reporting problems with the Fire Command
Panel and for his reporting of the KKK incident, but whistle
blowing is not a protected activity under the FLSA.  (Goodman
Tr. at 531.)  Nor can Goodman's allegations that he was
retaliated against for his alleged complaints of overtime abuses
to his supervisors survive.  As a matter of law, the FLSA
applies only to "retaliation for filing formal complaints,
instituting a proceeding, or testifying, but does not encompass
complaints made to a supervisor."  *Hyunmi Son v. Reina Bijoux,
Inc.*, 823 F. Supp. 2d 238, 244 (S.D.N.Y. 2011) (court held that
FLSA applies only to "retaliation for filing formal complaints,
instituting a proceeding, or testifying allege that he was
retaliated against for complaints about unpaid overtime but does

20

not encompass complaints made to a supervisor."). Both of
Goodman's FLSA claims are therefore dismissed.

## VI. GOODMAN'S STATE LAW CAUSES OF ACTION AGIANST THE PORT AUTHORITY DEFENDANTS FAIL FOR LACK OF JURISDICTION AND REGARDLESS ARE WITHOUT MERIT

New York Courts have consistently held that a party
bringing an action against the Port Authority must strictly
comply with the conditions precedent pursuant to which the Port
Authority waived its sovereign immunity for a court to have
jurisdiction over the action. *See Lyons v. Port Authority*, 643
N.Y.S. 2d 571 (1st Dep't 1996). These conditions precedent are
articulated in N.Y. Unconsol. Law § 7107, which requires that
all claims under state law against the Port Authority be filed
within one year. Section 7107 provides in relevant part, "any
such action or proceeding prosecuted or maintained under this
act shall be commenced within one year after the cause of action
therefore shall have accrued. . . ." *See Yonkers Contracting
Co. Inc. v. The Port of Authority Trans-Hudson Corporation*, 93
N.Y.2d 375, 378-79 (1999) (holding that the one year period of
limitations in § 7107 is "so incorporated with the remedy given
to make it an integral part of it, and the condition precedent
to the maintenance of the action at all."). In addition,
because the one year requirement is a condition precedent and

21

not a mere statute of limitations, tolling provisions are
inapplicable, including CPLR 205(a), which permits a plaintiff
to refile an action within six months after its dismissal. *See
id.; see also* Yonkers *Contracting Co. Inc. v. Port Authority
Trans-Hudson Corp.*, 669 N.Y.S.2d 671 (1999).  N.Y. Unconsol. Law
§ 7108 also requires as a condition precedent that "the notice
of claim required by section seven hereof shall be in writing,
sworn to by or on behalf of the claimant." *See Luciano v.
Fanberg Realty Co.*, 475 N.Y.S.2d 854 (1st Dep't 1984)
(recognizing that the Notice of Claim requirement is
jurisdictional).

Goodman has failed to comply with either of these
jurisdictional requirements.  Goodman filed his action on
November 4, 2010, more than one year after his termination and
any of his state law claims accrued.  Further, he served an
unsworn Notice of Claim.  Jurisdiction is thus inappropriate.

Regardless, the Port Authority is not subject to the
state statutes under which Goodman brings his claims.  First,
New York and New Jersey's anti-discrimination laws cannot be
applied against the Port Authority. *See, e.g.*, *Dezaio v. Port
Authority of NY and NJ*, 205 F.3d 62 (2d Cir. 2000) (affirming

22

that New York and New Jersey's anti-discrimination laws do not
apply to the Port Authority because single state legislation
will not apply to a bi-state agency); *Heightened Independence
and Progress, Inc. v. Port Authority of New York & New Jersey*,
693 F.3d 345, 358 (3d Cir. 2012) (same). Second, district
courts in this circuit have held that the Port Authority is not
subject to New York State's Human Rights law, and that the
NYSHRL and NJLAD are not applicable to the Port Authority. *See,
e.g.*, *Evans v. Port Auth. Of New York & New Jersey*, 192 F. Supp.
2d 247, 281-82 (S.D.N.Y. 2002) ("Defendants are correct that the
respective antidiscrimination laws of New York and New Jersey do
not apply to the Port Authority because it is an agency created
by an interstate compact."); *Vernon v. Port Auth. Of New York &
New Jersey*, 154 F. Supp. 2d 844, 850 (S.D.N.Y. 2001) (the "Port
Authority, a bi-state entity created by a Compact between New
York and New Jersey, lies outside New York's [and New Jersey's]
anti-discrimination regime[s]."); *King v. Port Auth. Of New York
and New Jersey*, 909 F. Supp. 938 (D.N.J. 1995) (the Direct Court
for the District of New Jersey held that NJLAD did not apply to
the Port Authority); *Spence-Parker v. Delaware River and Bay
Authority*, 616 F. Supp. 2d 509, 520 (D.N.J. 2009) (the District
Court for the District of New Jersey held that NJCEPA does not
apply to bi-state entities). Goodman's claims under NYHRL,

23

NYSHRL, NJLAD, and NJCEPA thus cannot proceed even if they had
been filed in accordance with the jurisdictional requirements.
This likewise applies to Goodman's individual causes of action
against Gulick and Parente as aiders and abettors under the
NYHRL.  Since liability cannot be established against the Port
Authority and PATH under this claim, accessorial liability
cannot be found as to the individual Defendants.  *See DeWitt v.
Lieberman*, 48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999) (liability
must be established as to the employer/principal before
accessory liability can be found as to an alleged aider and
abettor); *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d
Dep't 1998) ("It is the employer's participation in the
discriminatory practice which serves as the predicate for the
imposition of liability on others for aiding and abetting.").

        Similarly, 12 N.Y.C.R.R. 142-2.2, the New Jersey State
Wage and Hour Law and the New Jersey Prevailing Wage Law, as
single state legislations, are inapplicable to the Port
Authority Defendants.  Both the state and federal courts in New
York have long held that in order to satisfy the "concurred in"
language of a Compact, the legislatures of both states must do
so "clearly and expressly" by enacting substantial identical
legislation in both states.  *See Dezaio*, 205 F.3d at 65

                                24

(adopting the express intend standard for interpreting Compact amendment); *see also Malverty v. Waterfront Commission of New York Harbor*, 71 N.Y.2d 977, 979 (1988); *Rose v. port Auth. Of New York & New Jersey*, 13 F. Supp. 2d 516, 523 (S.D.N.Y. 1998). 12 N.Y.C.R.R. § 142-2.2, upon which Goodman bases his overtime claim, does not contain any express language governing the Port Authority, and thus cannot be applied to Port Authority or PATH. *See Ageson v. Catherwood*, 26 N.Y.2d 521 (1970) (holding that New York State's minimum wage law does not govern wages paid to Port Authority employees).   This additionally applies to both the New Jersey State Wage and Hour Law, N.J.A. 34:11-56a, and the New Jersey Prevailing Wage Law, N.J.S.A. 34:1156.25 eq. seq., neither of which contain express language applying these statutes to the Port Authority.[4]

Goodman's remaining state law claims, (1) intentional infliction of emotional distress; (2) conversion; and (3) unjust enrichment, even if they were appropriately filed, are without merit or time-barred under the relevant state statutes.

---

[4] Plaintiff states that he complied with the suitability statute because all of his state law claims did not accrue until Goodman had exhausted his administrative remedies, which were finalized on November 2, 2009.  (Opp. Br. at 27-29.)  Plaintiff, though, cites no authority for this proposition, nor does the suitability statute mention this exception.  Further, even if the NYSHRL were applicable to PATH and even if its tolling provision did apply, Goodman still did not file his EEOC charge until June 28, 2010, more than four months after he would have been required to commence his action.

Goodman's emotional distress claim is governed by a one-year statute of limitations. *Gallagher v. Directors Guild of America, Inc.*, 533 N.Y.S.2d 863, 864 (1st Dep't 1988) (the First Department held that intentional infliction of emotional distress is governed by a one-year statute of limitations pursuant to CPLR § 215(3)). Goodman's Complaint was filed on November 4, 2010, over one year after his last day of work and the accrual of his alleged emotional distress claim on February 16, 2009. Plaintiff incidentally concedes that this claim is time-barred under the Suitability Statute. (Opp. Br. at 30.)

Goodman's claims for conversion and unjust enrichment are also both time-barred by the applicable three-year statute of limitations, which runs from the date the alleged conversion or unjust enrichment took place.[5] *Stadtman v. Cambere*, 422 N.Y.S.2d 102 (1st Dep't 1979) (statute of limitations for conversion is three years); *Vigilant Ins. Co. of Am. v. Hous.*

---

[5] Plaintiff contends that his conversion and unjust enrichment claims did not accrue until June of 2010, when he discovered that his property was still in use by PATH. Again, Plaintiff cites no authority supporting this notion, nor does such authority exist. Plaintiff's claims are thus time-barred by the relevant statutes, which plainly state that a claim for conversion commences when the wrong is perpetrated. *See Stadtman v. Cambere*, 422 N.Y.S.2d 102 (1st Dep't 1979) (statute of limitations for conversion is three years); *see also General Stencils, Inc. v. Chiappa*, 18 N.Y.2d 125, 127 (1966) (mere ignorance or lack of discovery of wrong is not sufficient to toll statute of limitations, which commence running when the wrong is perpetrated, including with respect to conversion actions).

*Auth. of El Paso,* 87 N.Y.2d 36, 44 (1995) ("accrual [of a conversion claim] runs from the date the conversion takes place and not from discovery or the exercise of diligence to discover"). In any event, both of these claims also fail on the merits.

   To prove the tort of conversion, a party must show at minimum "an unauthorized assumption and exercise of the right to ownership over goods belonging to another to the exclusion of the owner's rights." 23 *New York Jur. 2d*, Conversion § 51, citing *Employers Fire Ins. Co. v. Loffer*, 245 N.Y. 102 (1927). Goodman states that he made documents and systems in 2004, allegedly converted by PATH and Port Authority for their daily use after Goodman's termination. (Goodman Tr. at 571.) Goodman, however, fails to show (1) that these alleged documents were his property; (2) that they contained only his work; or (3) even that the Port Authority Defendants still use these documents. (Goodman Tr. at 565 ("Q: Do you know these [the documents were] being used? A: That I can't say.").) In fact, Goodman does not provide any details about these alleged systems and publications, or their potential worth. Goodman further admits that he actually took the drawings and designs from the National Fire Protection Association and PATH for the creation of these documents. (Goodman Tr. at 554-555.)

In addition to alleged conversion of Goodman's documents, Plaintiff also maintains that the Port Authority Defendants did not pay Goodman overtime despite logs reflecting overtime hours and Goodman requesting overtime pay. Goodman, however, has not produced any such logs documenting this alleged overtime work, nor has he shown any communications authenticating that his superiors were aware of overtime work and refused to pay. Goodman's conclusory allegations are thus insufficient to sustain a claim for conversion.

In order to make a claim for unjust enrichment, a plaintiff must prove "(1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an exception of compensation therefore; and (4) a determination of the reasonable value of the services rendered." *Moors v. Hall*, 532 N.Y.S.2d 412, 414 (2d Dep't 1988). As with the alleged loss of overtime pay underlying the conversion claim, Goodman was compensated for all services accepted by and reported to the FJC, Summit and Guardian concerning his performance of work and does not present sufficient allegations to the contrary. The unjust enrichment claim therefore also fails.

28

## IV.   CONCLUSION

Upon the conclusions set forth above, Defendants' motion for summary judgment is granted in its entirety.

It is so ordered.

**New York, NY**

**September** *18*, **2013**

ROBERT W. SWEET
U.S.D.J.